**Willis K. BAKER, Jr., and Mervin "Bud" Cornelsen, Appellants,**

v.

**UNITED STATES of America, Appellee.**

Nos. 21318-A, 21318-B.

United States Court of Appeals Ninth Circuit.

April 4, 1968.

Rehearing Denied May 21, 1968.

Vincent J. Mullins, Gerald J. O'Connor of Sullivan, Roche, Johnson & Farraher, San Francisco, Cal., for appellants.

James E. Shekoyan, Asst. U. S. Atty., William Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Count one of a three-count indictment, filed on April 7, 1966, charged Charles Raymond Rush, Roger Lee Stephenson, Willis Kingsley Baker, Jr., and Mervin "Bud" Cornelsen, under 18 U.S.C. §§ 371 and 641 (1964), with conspiracy to receive, conceal and convert stolen government property to their own use. Count two of the indictment charged Rush with stealing a quantity of government property in violation of 18 U.S.C. § 641. Count three charged Baker with receiving, concealing and converting a quantity of government property in violation of 18 U.S.C. § 641.

Stephenson pleaded guilty to count one, the only count involving him. Rush, Baker and Cornelsen pleaded not guilty to the counts in which they were individually named. These three were jointly tried before a jury. Rush was convicted on counts one and two. Baker was convicted on counts one and three. Cornelsen was convicted on count one. Baker and Cornelsen jointly appeal.

Baker was the owner of an aircraft parts and supply company, known as Aero Enterprises, located at the Fresno Airport, Fresno, California. Cornelsen was one of his employees. Stephenson was a cement mason apprentice in Fresno. In 1963 Stephenson met Rush, who was an employee at the Lemoore Naval Air Station. Rush worked as a stockman in the stowage branch in the aviation warehouse. In that position he had complete access to a wide range of military equipment, including radio and navigational components for aircraft. Stephenson was also acquainted with Baker and Cornelsen.

In the summer of 1965, Stephenson purchased from Rush some altimeters for use in sport parachuting. He found that they were too sensitive to use for jumping and therefore sold them to Baker on August 30, 1965. Stephenson sold various aviation items to Baker from time to time, after having acquired them from Rush. Cornelsen was present while several of these transactions between Stephenson and Baker were consummated. Rush had stolen some of these items from Lemoore Naval Air Station's supply department.

The circumstances under which Baker purchased these items and under which he and Cornelsen dealt with the items after purchase led the jury to find Baker guilty on the receiving, concealing and converting count, and both Baker and Cornelsen guilty on the conspiracy count.

On appeal Baker argues that the district court erred in denying his motion

for a separate trial on count three of the indictment charging him alone with receiving and concealing stolen government property. Baker alleges that the joinder of count three with count two, charging Rush with stealing the same property, was an impermissible joinder of defendants under Rule 8(b), Federal Rules of Criminal Procedure.

Rule 8(b) permits the joinder of multiple defendants only where it is alleged that they have "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The rule provides, however, that "all of the defendants need not be charged in each count."

■ Here counts two and three, the substantive counts, and count one, the conspiracy count, considered together, all arise out of the same series of transactions in which all of the defendants allegedly participated. Where this is the case, the joinder, in one indictment, of the conspiracy count and substantive counts is permissible under Rule 8(b). See Schaffer v. United States, 362 U.S. 511, 513, 80 S.Ct. 945, 4 L.Ed.2d 921; Williamson v. United States, 9 Cir., 310 F.2d 192, 197 n. 16; Hill v. United States, 9 Cir., 306 F.2d 245, 247.

Baker also asserts that the trial court should have granted his motion for severance and separate trial of count three under Rule 14, Federal Rules of Criminal Procedure, because of prejudice to himself stemming from the joinder of defendants and offenses.

Baker first argues that he was prejudiced because a confession of one of the defendants was introduced in evidence against him. But the only defendants who were tried with Baker were Cornelsen and Rush, and neither of them made a confession. Although Stephenson's confession was introduced into evidence, it was introduced by Baker in an attempt to impeach Stephenson's testimony. Thus, the introduction of the confession was not hearsay and the joinder of defendants created no prejudice in this regard.

Baker also asserts, in effect, that prejudice is probable in a case where two offenses are joined because a defendant may wish, as a practical matter, to testify on one count and remain silent on the other. However, Baker makes no contention that this was his wish in this case, and that the joinder thwarted such tactics.

■ Baker suggests several other reasons why, in his view, actual or potential prejudice resulted from failure to grant him a separate trial on count three of the indictment. We have examined each of these and conclude that no substantial actual or probable prejudice has been demonstrated. While Rule 14 permits the trial court to order severance of either offenses or defendants if it appears that a defendant may be prejudiced by joinder, the failure of the court to order severance is not a basis for reversal absent a clear abuse of discretion. Mendez v. United States, 9 Cir., 349 F.2d 650, 652. We find no abuse of discretion in this regard.

Baker contends that the trial court abused its discretion in denying his repeated motions for a speedy trial.

The first three-count indictment was filed on January 19, 1966. On February 18, 1966, Baker and Cornelsen moved to dismiss count one of that indictment (conspiracy). At the same time Baker moved for a separate and speedy trial as to him on count three (receiving and concealing) in the event count one was dismissed. On February 28, 1966, both motions were granted and, whereas a joint trial had been set for May 11, 1966, a separate trial for Baker on count three was then set for April 5, 1966.

On March 10, 1966, the Government filed a superseding indictment containing the same three counts, but with some revision of count one. The Government then moved to vacate the April 5, 1966 trial setting on count three of the first indictment, stating that, in view of the superseding indictment, the Government would not prosecute under the first indictment. The district court thereupon

vacated the April 5, 1966 trial setting, and ordered a joint trial of all three defendants on all counts of the superseding indictment for May 11, 1966.

On April 4, 1966, Baker moved for an early and separate trial of count three of the superseding indictment. On April 7, 1966, before the above motion was argued, the Government filed a second three-count superseding indictment. Again there were revisions in count one of the indictment. On April 11, 1966, Stephenson entered a plea of guilty on count one (conspiracy), and May 23, 1966 was fixed as the date of his presentence report. As noted above, Baker, Cornelsen and Rush pleaded not guilty on all counts affecting them.

Baker's motion for severance was argued and denied on April 11, 1966. Counsel for Rush moved that the trial date be postponed from May 11, 1966 to the first or second week of June. But Baker and Cornelsen preferred to hold the May 11, 1966 trial date and the Government indicated satisfaction with that date. The court therefore retained the May 11, 1966 trial setting.

On May 11, 1966, Baker and Cornelsen appeared in court ready for trial. They were met by a motion for a continuance filed by the Government that morning, without prior service on opposing counsel. The trial court, however, apparently had been given advance notice of the motion for a continuance since, prior to May 11, 1966, the jury panel had been instructed not to appear on that day. The motion was made on the ground that the Government had been unable to serve a subpoena on one of its witnesses. Baker and Cornelsen strenuously resisted the motion for continuance, but the order was granted and the trial was continued to May 24, 1966. The case went to trial on that day.

■■ The continuance from May 11 to May 24, 1966, was for such a short period of time that it could not, in our view, constitute a denial of appellants' Sixth Amendment right to a speedy trial. We similarly conclude with regard to the delay from April 5, 1966, once set as the trial date for Baker, to the May 24, 1966 trial date.

■ Baker and Cornelsen also appear to argue, in effect, that the trial court abused its discretion in granting the continuance. However, no prejudice is alleged to have resulted from this continuance whether deemed to be from April 5, or May 11, 1966. We hold that the trial court did not err in setting the trial for May 24, 1966, rather than an earlier date.

Baker and Cornelsen contend that the court erred in denying their motions for acquittal, made at the close of the Government's case and renewed at the close of all the evidence. The motions were made on the ground that the evidence was insufficient to support the verdicts of guilty. On appeal, one argument which appellants make in support of this contention is that the evidence failed to establish beyond a reasonable doubt that Baker and Cornelsen knew the property in question had been stolen.

The brief on appeal, filed by the office of the United States Attorney, contains numerous misstatements, all favorable to the Government, concerning the evidence pertaining to knowledge. However, each of these misstatements has been carefully noted and thoroughly documented in appellants' reply brief and, in addition, we have made our own examination of the record.

The evidence on the question of whether Baker and Cornelsen knew that the property had been stolen is largely circumstantial. There is a good deal of such evidence which tends to indicate that Baker and Cornelsen did not have such knowledge. On the other hand, there is substantial circumstantial evidence to the contrary.

Among items of evidence in the latter category is the testimony of Douglas Wood that when he asked Baker if the equipment was "hot," Baker replied, "No, it's a little warm"; the testimony of John Alvey that when he asked appellants if the stuff was "hot," they replied,

"Everything was taken care of and don't sweat about it," and that the equipment was "warm"; the testimony of Rush that Cornelsen joined with Stephenson in attempting to induce Rush to take parts from Lemoore Naval Air Station; and the testimony of Stephenson that, in a conversation with Baker and Cornelsen, the Lemoore source of the items was mentioned and, during the conversation, Baker gave Stephenson a list of the specific items he could use. Many other items of evidence tended to show guilty knowledge if the jury chose to accept the version presented by some witnesses and reject the exculpatory explanations offered by other witnesses.

Viewing the evidence in the light most favorable to the Government, as we are required to do on this appeal, we conclude that reasonable minds could find beyond a reasonable doubt, that Baker and Cornelsen knew that the government property had been stolen.

Appellants also argue that the evidence is insufficient on the conspiracy count in that it failed to establish a concert of action by Baker, Cornelsen and Rush. In our opinion, the testimony concerning the meeting which Stephenson had with Baker and Cornelsen in September 1965, provides ample evidence of concert of action between Baker, Cornelsen, Stephenson and some person in the supply department at Lemoore who may then have been unknown to Baker and Cornelsen. It is not material whether, during the course of the conspiracy, Baker and Cornelsen knew that the fourth conspirator was Rush. See Rogers v. United States, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344; Lile v. United States, 9 Cir., 264 F.2d 278, 281.

Another point appellants urge on the question of the sufficiency of the evidence is that, whereas the indictment charges them with having received an ARN-21 unit, serial no. AAZ2222 on or about October 5, 1965, the evidence shows that this unit was in the Government's own hands at least as late at November 1, 1965. We reserve discussion of this argument to a later point in this opinion

where the matter of a discrepancy between indictments will be dealt with.

Finally, on the question of the sufficiency of the evidence, Cornelsen points out that he did not himself buy any of the property, and argues that if there was a receiving and concealing of the property it was by his employer Baker, and not by Cornelsen, who was Baker's employee.

An employee who assists his employer in receiving and concealing stolen property purchased by the employer, is not necessarily guilty of aiding and abetting a violation of 18 U.S.C. § 641, or of conspiring to commit such an offense. But if, as the evidence pertaining to Cornelsen tends to show, he has knowledge that the property has been stolen and that his employer intends to convert it to his own use, and if he conspires with his employer and others to effectuate that plan and actively participates therein, he is guilty of engaging in an unlawful conspiracy as defined in 18 U.S.C. § 371. We think the evidence is sufficient to support the jury finding that Cornelsen engaged in such a conspiracy.

We conclude that the trial court did not err in denying appellants' motions for acquittal, made on the ground that the evidence is insufficient.

Before, during and after the trial Baker contended that the indictment charged him with two crimes involving the same activity. Specifically, he asserted that count one (conspiracy) and count three (receiving, concealing and converting government property) were identical offenses. All of his efforts made on this ground, to dismiss one count or the other, to compel an election, to instruct the jury on the point, and to grant a new trial, were denied. Baker argues that the trial court erred in denying such relief.

Baker's position on this point is premised on the view that in order to convict him under count three it was necessary to prove that Rush stole the subject property, that Stephenson delivered the property to Baker, and that

Baker received it, with knowledge of the theft, for his own use—and that these are the exact same elements required to prove the conspiracy charged in count one.

■ In order to convict Baker of the substantive offense set out in count three, all the Government had to prove was that he received government property from Stephenson, knowing that it was stolen, with intent to convert it to his own use. In order to prove the conspiracy offense set out in count one, the Government had to prove that Baker conspired with Stephenson, Cornelsen and Rush to commit the substantive offense. The commission of the substantive offense and the conspiracy to commit it are two separate and distinct offenses, and a conviction on the substantive count does not merge the conspiracy count. Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 90 L.Ed. 1489; Hill v. United States, 9 Cir., 306 F.2d 245, 247.

■ However, where it is impossible under any circumstances to commit the substantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy. See Gebardi v. United States, 287 U.S. 112, 122, 53 S.Ct. 35, 77 L.Ed. 206. Thus Baker could not have been convicted of conspiring with Stephenson alone to receive stolen government property, since Baker received the property from Stephenson. But where a conspiracy contemplates the cooperation of a greater number of parties than are necessary to the commission of the principal offense, the one who commits the principal offense may be convicted of that offense and also the conspiracy. See *Gebardi*, 287 U.S. at 122, n. 6, 53 S.Ct. 35; Reno v. United States, 5 Cir., 317 F.2d 499, 503–504.

Here there was evidence sufficient to warrant a jury finding that Baker con-

spired with Stephenson, Cornelsen and Rush to commit the substantive offense involving Baker's reception and conversion of stolen property from Stephenson. The two charges are therefore not identical and the district court did not err in denying Baker relief on that ground.

Appellants contend that the court erred in receiving, over their objection, evidence pertaining to three ARN-21 units which had been stolen from Lemoore.

■ Prior to trial the court granted a motion to suppress certain evidence seized as the result of an unlawful search on December 21, 1965, at Fresno, California.[1] The order also suppressed "all evidence obtained directly or indirectly from the search and seizure made pursuant to said search warrant." The three ARN-21 units were seized after the unlawful search at Allied Aircraft Sales in Phoenix, Arizona. Appellants contend that the Government obtained the information which led to the discovery of these items as a result of interrogating Baker and Cornelsen during the course of the unlawful search. They argue that introduction in evidence of these items was therefore in violation of the court's suppression order and the Supreme Court ruling in Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441.

John David Carroll, one of the F.B.I. agents who conducted the unlawful search, testified that on the morning of December 21, 1965, shortly before the search was made on that day, he conversed with one John Alvey and learned that three ARN-21 units had been shipped to Robert "Gallagher" in Phoenix, Arizona. The correct spelling of this name is "Gallaher." According to Carroll, Alvey at this time also mentioned Allied Aircraft, located on Washington Street in Phoenix. Carroll further testified that, during the search, he asked Baker if he had any records

---

**I.** The unlawfulness of the search and seizure resulted from the fact that the search was conducted on premises totally separate and distinct from the premises described in the search warrant.

on the shipment of equipment and supplies to Phoenix, and Baker replied that he had shipped some things to Gallaher but did not have any records on this. The name of Allied Aircraft and Gallaher's connection with that company must have come up during this conversation because Carroll testified that Baker and Cornelsen told him that Phoenix, Arizona, was a sufficient address to reach Gallaher.

The trial court denied the motion to suppress. Later in the trial, when Alvey was on the witness stand, counsel for Cornelsen handed him a copy of a report, dated December 27, 1965, which Carroll had prepared concerning his conversation with Alvey described above. Alvey stated that the report correctly reflected his conversation with Carroll. Among other things, the report stated that Alvey said Baker sold some radios to Bob "Gallagher" on Washington Street, in Phoenix, Arizona.

Directing Alvey's attention to the "12–23–65" date (two days after the unlawful search) which appeared at the bottom of the report, counsel asked Alvey if that was "about" the date when Alvey conversed with Carroll. Alvey replied, "It's possible."

In urging that the court erred in receiving evidence concerning the three ARN-21 units, appellants assert that Alvey's testimony, described above, shows that Carroll did not receive any information from Alvey until two days after the unlawful search. Hence, they urge, Carroll must have received his first information concerning the whereabouts of these units during his conversation with Baker and Cornelsen at the time of the search.

We do not agree. In the first paragraph of Carroll's report of December 27, 1965, he stated that his conversation with Alvey occurred on December 21, 1965. But when Cornelsen's counsel asked Alvey to state the date of the conversation, he directed Alvey's attention not to the December 21, 1965 date, but to the "12–23–65" date which appeared at the bottom of the report.

That date, however, was not intended to indicate the date of the conversation, since it read: "Date dictated 12–23–65." Thus Alvey was misled, albeit inadvertently, in eliciting his recollection as to the date of the conversation. Even then, Alvey did not state categorically that the conversation occurred on December 23, 1965. All he said was, "It's possible."

Appellants also rely on some other circumstances in arguing that the Government received essential information concerning the whereabouts of the ARN-21 units during interrogation of Baker and Cornelsen at the time of the unlawful search. One of these is that Carroll's report made no mention of any ARN-21 units. This is immaterial. The report indicated that Alvey told Carroll that Baker had sold some radios to Bob "Gallagher" of Allied Aircraft, on Washington Street in Phoenix, Arizona. This was enough of a lead to take the government agents to that address.

This observation also negates any possible significance arising from the fact that, during the unlawful search, Carroll was told that with the name "Allied Aircraft," there was no need of obtaining a street address in Phoenix. Carroll had obtained an adequate address from Alvey. The fact that, in his conversation with Carroll, Alvey referred to a "Gallagher" instead of "Gallaher" is likewise without significance.

The trial court did not err in receiving these exhibits in evidence.

Appellants also predicate error upon a curious discrepancy in indictments which was discovered during the course of the trial.

Count one of the original indictment, returned on January 19, 1966, charging a conspiracy, alleged three overt acts, all occurring on or about September 24, 1965. The first alleged overt act was the theft, by Rush, of one ARN-21 unit from Lemoore, serial number AAZ2222. The second alleged overt act was the delivery of one ARN-21 unit by Stephenson to Baker on or about the same day, and the third alleged overt act was

the receiving and concealment of "the above stated property" by Baker and Cornelsen on or about the same day. While no serial number was stated with respect to the second and third overt acts, the words "the above stated property" and the identity of dates indicates that all three overt acts were concerned with an ARN-21 unit, serial number AAZ2222. The description of the three overt acts set out in the conspiracy count of the first superseding indictment was identical with that contained in the first indictment.

The case was tried on a second superseding indictment, filed on April 7, 1966. In count one of that indictment (conspiracy), three overt acts are set out, all occurring on or about October 5, 1965. Each of these three overt acts relates to three ARN-21 units, but no serial number is given for any of them. However, the copies of that indictment which the clerk of the district court handed to counsel for Baker and Cornelsen prior to the trial contains the notation "Serial No. AA22222" after the reference to the three ARN-21 units referred to in the first overt act (stealing by Rush) of the conspiracy count.[2]

During the Government's case it was established that an ARN-21 unit, serial number AAZ2222, was in the possession of the Government at Lemoore on November 1, 1965. At the close of the Government's case, defendants moved for acquittal, one ground being that the Government had failed to prove, as alleged in count one of defendants' copy of the indictment, that all three ARN-21 units, serial number AAZ2222, had been stolen, delivered, received and concealed "on or about October 5, 1965." The

court, having before it the correct form of the indictment showing no serial number, denied the motion.

Immediately thereafter, a colloquy occurred during which the discrepancy between the indictments came to light.[3] On the basis of this revelation, counsel for Baker and Cornelsen immediately renewed their motions for acquittal or dismissal. The court denied the motions, pointing out that the correct form of the indictment had been read aloud in court at the outset of the trial and that defendants could not therefore complain that they were unaware of the fact that the overt acts did not refer to any particular serial number.

On this appeal defendants argue that they were so prejudiced by the described discrepancy in indictments that the court erred in denying their motions for acquittal or dismissal. They urge that, based upon the form of the indictment which had been supplied to them, one of their chief defenses was the fact that an ARN-21 unit, serial number AAZ2222, was still in Government hands in November 1965, and therefore could not have been stolen, delivered, received and concealed "on or about October 5, 1965." This defense, they argue, was undermined by the fact, unknown to them until the end of the Government's case at the trial, that the overt acts alleged in the true indictment did not refer to ARN-21 units of any particular serial number.

An observation is first in order concerning the fact that, in the copies of the indictment supplied to defendants, the serial number AAZ2222 followed a reference to three ARN-21 units, rather

---

2. It will be noted that the serial number set out in the copies of the third indictment handed to defendants varied somewhat from the serial number referred to in the first overt act alleged in the first two indictments, "AA22222" being used instead of AAZ2222. However, as Baker's attorney recognized at the trial, the first "2" was a typographical error and the serial number should have read "AAZ-2222" as in the first two indictments.

3. The Government attorney explained to the court that he had intended to remove this serial number when he modified the second indictment in drafting the third indictment. However, through some error, the serial number, while omitted from the copy signed by the jury foreman and used by the court, was retained in the copies given to Baker and Cornelsen.

than a single ARN-21 unit, as in the first two indictments.

It is common knowledge that individual devices and appliances are given individual serial numbers, and that two or more such items would not carry the same serial number. Moreover, defendants knew from the allegations of the first two indictments that serial number AAZ2222 was intended to identify only one ARN-21 unit. Accordingly, we do not believe that Baker and Cornelsen were misled into believing that the serial number, stated with regard to the first overt act in the copy of the indictment handed to them, was intended to identify all three ARN-21 units referred to in that alleged overt act. They were, however, entitled to believe that one of the ARN-21 units carried that serial number.

As stated above, the evidence shows that an ARN-21 unit, with serial number AAZ2222, was in the possession of the Government at Lemoore on November 1, 1965. However, the Government proved that, later that month, this unit was on the premises of Baker's Aero Enterprises in Fresno.[4] Thus, the Government actually did prove the allegations of the form of indictment handed defendants that these overt acts occurred with respect to an ARN-21 unit, serial number AAZ2222, unless the time variance between "on or about October 5, 1965," as alleged in that indictment, and sometime in November 1965, after November 1, as shown by the evidence, calls for a different conclusion.

Defendants were charged with having participated in a conspiracy which began about August 1965, and continued to about December 21, 1965. The overt acts alleged in the indictment concerning ARN-21 units were proved to have been committed during that period. This being the case, the fact that some of these acts, namely those concerning one of the three ARN-21 units, occurred sometime during the last twenty-nine days of November 1965, rather than "on or about October 5, 1965," is, in our opinion, an immaterial and non-prejudicial variance.

Our conclusion in this respect finds support in Strauss v. United States, 5 Cir., 311 F.2d 926, 932. In that case the indictment alleged that the overt acts, whereby co-defendant Goodman drew specified checks on a particular bank, occurred between November 8, 1957 and March 27, 1958. The proof showed that the checks had been drawn between June 3 and August 29, 1957. The court held that, under the circumstances, this variance in proof did not prejudice the defense, observing that a substantial similarity between the facts alleged in the overt act and those proved is all that is required.

Baker and Cornelsen were therefore not entitled to rely, as a substantial defense, upon the fact that they could prove the overt acts concerning one of these ARN-21 units did not take place on or about October 5, 1965, as compared to the later day shown by the evidence. Accordingly, they were not misled by the copies of the indictments supplied to them into depending upon a substantial defense which was not available under the true form of the indictment. The trial court did not err in denying the motions for acquittal or dismissal based on the discrepancy between indictments.

The views just expressed also call for rejection of defendants' contention that, because ARN-21, serial number AAZ-2222 was still in the possession of the Government on November 1, 1965, the evidence is insufficient on the conspiracy count.

4. Robert A. Gallaher, with Allied Aircraft Sales, Phoenix, Arizona, testified at the 1966 trial that he saw a unit with that serial number, and two other ARN-21 units, at Baker's Fresno shop "[i]n November of last year," that he talked to Baker and Cornelsen about them, and that, at that time, he purchased the three ARN-21 units from Baker for about $350 each.

At the outset of the testimony of Stephenson, an alleged co-conspirator and witness for the Government, the fact was elicited, in response to a direct question from the United States Attorney, that Stephenson had pleaded guilty. Immediate objection was made thereto on the ground that this constituted misconduct, but the objection was overruled. At the first opportunity a motion for mistrial was made upon the same ground but was denied. In its charge to the jury, the court instructed that the jury could not consider the guilty plea of Stephenson "as evidence against any of the other defendants," and that this evidence could be considered only "when you are determining whether or not Mr. Stephenson told the truth when he testified in this court room."

Appellants contend that the trial court erred in denying the motion for a mistrial, and that such error was not cured by the described instruction given at the close of the case.

■ The general rule is that guilty pleas of co-defendants cannot be considered as evidence against those on trial. United States v. Restaino, 3 Cir., 369 F.2d 544, 545. The reasoning here is that a defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a Government witness or co-defendant has pleaded guilty to the same charge. Babb v. United States, 5 Cir., 218 F.2d 538, 542.

The question remains, however, whether the error in receiving in evidence Stephenson's statement that he had pleaded guilty, was prejudicial under the circumstances of this case.

The trial court did not, as in United States v. Toner, 3 Cir., 173 F.2d 140, or United States v. Hall, 2 Cir., 178 F.2d 853, instruct the jury that it could take into consideration in determining the guilt of an alleged conspirator the fact that an alleged co-conspirator had pleaded guilty. As indicated above, the trial court did just the opposite—it instructed that this evidence was not to be considered in passing upon defendants' guilt. No case has been called to our attention where, in the face of such a cautionary instruction, reversible error has been declared.

Moreover, in the case before us, the statement obtained from Stephenson that he had pleaded guilty added nothing of substance to the information the jury obtained as a result of other evidence. In the course of his direct testimony Stephenson thoroughly implicated himself. In cross-examination of Stephenson, counsel for Baker put in evidence, and cross-examined Stephenson concerning, the report of F.B.I. agent Carroll summarizing his interview with Stephenson. During this interview Stephenson told of delivering items to Baker and Cornelsen which Stephenson knew had been stolen. Baker's counsel also cross-examined Stephenson as to the latter's understanding of what he had pleaded guilty to.

■ We hold that the court did not err in denying defendants' motion for a mistrial made on the basis of Stephenson's testimony that he had pleaded guilty.

Appellants question the giving of certain instructions, and the failure to give other requested instructions.

Having in view the instructions as a whole, and the objections thereto which were taken on behalf of defendants, we find no prejudicial error with respect to the instructions given, and the failure to give requested instructions.

The remaining assignments of error have been examined and have been found to be without merit.

Affirmed.