**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Herbert SPERLING, Defendant-Appellant.**

**No. 237, Docket 76–1269.**

United States Court of Appeals,
Second Circuit.

Submitted Sept. 27, 1976.

Decided June 13, 1977.

As Amended on Rehearing Granted
Aug. 26, 1977.

Herbert Sperling, pro se.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City (John S. Siffert and Audrey Strauss, Asst. U. S. Attys., New York City, of counsel), for plaintiff-appellee.

Before WATERMAN and VAN GRAAF-EILAND, Circuit Judges, and MOTLEY,* District Judge.

WATERMAN, Circuit Judge:

We are asked to decide whether after a trial upon a single indictment containing several counts the imposition of dual punishments for violations of both the conspiracy and continuing criminal enterprise provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 846 and 848, respectively, arising

* Of the Southern District of New York, sitting by designation.

out of the defendant's leadership of a large conspiratorial organization trafficking in illicit drugs, offends against the constitutional right not to be subjected to double jeopardy.

In a superseding indictment filed in the Southern District of New York in May 1973, Herbert Sperling and twenty-seven others were charged with various violations of the federal narcotics laws. Twelve counts were laid. The first charged Sperling and the others with conspiracy to violate the federal narcotics laws from January 1, 1971 through May 11, 1973, in violation of 21 U.S.C. § 846. The second charged Sperling alone with organizing and managing a continuing criminal narcotics enterprise involving at least five other people, in violation of 21 U.S.C. § 848.[1] The eighth, ninth and tenth, the "substantive counts," charged Sperling and others with possessing with intent to distribute, and with distributing, cocaine on three occasions, in violation of 21 U.S.C. §§ 812 and 841 and 18 U.S.C. § 2.

■ The offenses charged in the various counts all grew out of Sperling's role as leader of a large and highly profitable narcotics organization. The story is set forth in our earlier opinion in this huge case, United States v. Sperling, 506 F.2d 1323 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975), and we need not restate it here.

In June 1973, at the end of a jury trial which lasted about four weeks, Sperling was found guilty of all charges. In September 1973, Judge Pollack, who had presided at the trial, sentenced Sperling to life imprisonment and a $100,000 fine on the continuing criminal enterprise count (Count Two), and to concurrent terms of thirty years' imprisonment plus six years' special

parole on each of Counts One and Eight, Nine and Ten (the conspiracy and substantive counts, respectively), as well as fines of $50,000 on each of these four counts.

On appeal, this court affirmed Sperling's convictions on Counts One and Two and reversed and remanded for a new trial on Counts Eight, Nine and Ten. United States v. Sperling, supra.[2] In view of the fact that concurrent sentences had been imposed on these latter three counts and on the conspiracy count, we also remanded for a reconsideration of the sentence imposed on the conspiracy count. 506 F.2d at 1335 n. 14.

On rehearing following the remand for reconsideration of sentencing, the District Court adhered to its original sentence that Sperling be imprisoned for thirty years and fined $50,000 on the conspiracy count, to run concurrently with the life sentence and the $100,000 fine originally imposed on the continuing criminal enterprise count.

From this reimposition of the sentence and fine on the conspiracy count, Sperling now appeals, arguing, as he did in the court below,[3] that the conspiracy was both a lesser included offense of and one of the series of criminal activities charged in the continuing criminal enterprise count, and, hence, that sentencing on both counts, rather than on only one or the other, violated his Fifth Amendment guaranty against double jeopardy. After thorough consideration of this difficult and important issue, we order that appellant's prison sentence and fine on the conspiracy count be vacated.

I

■ We start with the proposition that the double jeopardy clause of the Fifth Amendment[4] "was designed as much to prevent the criminal from being twice punished for the same offence as from being

---

1. In a Bill of Particulars subsequently filed, eight others were named as participants in the continuing criminal enterprise, all of whom were among the conspirators named in Count One, six as co-defendants and two as unindicted co-conspirators.

2. Counts Eight, Nine and Ten were subsequently dismissed in an order of nolle prosequi.

3. The issue Sperling presents has not previously been considered by this court.

4. The double jeopardy clause reads: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

twice tried * * *." *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1874). It "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). *See also North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Indeed, in the original version of the Bill of Rights drafted by James Madison for submission to the House of Representatives in 1789, the clause read:

> No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence.

1 Annals of Congress 434 (1789). The wording was changed in the Senate to employ the more traditional term "jeopardy" in order to prevent a misconstruction of the clause that would have prohibited a defendant from seeking a new trial on appeal, but no alteration in the nature of the traditional guaranty itself was intended. *United States v. Wilson*, 420 U.S. 332, 341, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

This prohibition against multiple punishment for the same offense not only expresses the fundamental principle of law involved in this case but also specifies the precise nature of the issue confronting us: are the crimes of conspiracy to violate the federal narcotics laws, 21 U.S.C. § 846,[5] and that of engaging in a continuing criminal enterprise in violation of the federal narcotics laws, 21 U.S.C. § 848,[6] the *same offense* when they both arise out of a defendant's participation in a managerial capacity in a single, large-scale conspiracy whose object and accomplishment is to traffic illegally in narcotics? Only if they are not the same offense does punishment for both comport with the Constitution.

No contention is made here that the offenses charged rest upon different series of transactions. Indeed, on Sperling's original appeal the Government strongly contended that the evidence showed one large conspiratorial network, in which Sperling and co-defendant Vincent Pacelli, Jr. (whose trial had been severed) occupied the roles of co-leaders.

■ In double jeopardy cases such as this,

> [t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *accord, Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911). This so-called "*Blockburger* test" focuses on the statutorily required elements of the of-

---

**5.** 21 U.S.C. § 846 provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**6.** 21 U.S.C. § 848 provides, in pertinent part:

> (a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, to the forfeiture prescribed in paragraph (2); * * *.
>
>   *   *   *   *   *
>
> (b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

> (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
>
> (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter— ;
>
> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
>
> (B) from which such person obtains substantial income or resources.
>
> (c) In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and section 4202 of Title 18 * * * shall not apply.

fenses, *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), and hence the double jeopardy clause would not be violated here unless all the elements of the § 846 conspiracy offense must be proved in order to convict of the § 848 continuing criminal enterprise offense. *See Downey v. Peyton*, 451 F.2d 236, 238 (4th Cir. 1971). "[W]henever it appears that the proof of one offense proves every essential element of another growing out of the same act, the Fifth Amendment limits the punishment to a single act." *United States v. Austin*, 529 F.2d 559, 562 (6th Cir. 1976).

Put another way, under traditional analysis if a § 846 conspiracy is a "lesser included offense" of a § 848 continuing criminal the enterprise, then punishment imposed on the greater offense (§ 848) would preclude punishment on the lesser (§ 846). The test of a lesser included offense has been stated as follows:

> where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense; and if, in the commission of acts made unlawful by one statute, the offender must always violate another, the one offense is necessarily included in the other.

22 C.J.S. *Criminal Law* § 283 (1961) (footnotes omitted).

We believe that the two offenses for which Sperling was sentenced meet this test, and that, on the facts here involved, § 846 defines a lesser included offense within § 848. One of the elements required to convict of a § 848 offense is that the defendant shall have violated the narcotics laws "in concert with five or more other persons." "Concerted" means "mutually contrived or agreed on," or "performed in unison." *Webster's New Collegiate Dictionary* 233 (1976 ed.). We think it is too plain for cavil that to act "in concert" to violate the law necessarily includes conspiring to do so, and, hence, to prove the contin-

uing criminal enterprise charge is to prove the conspiracy.[7] *United States v. Jeffers*, 532 F.2d 1101, 1106–07 (7th Cir.), *cert. granted*, 429 U.S. 815, 97 S.Ct. 55, 50 L.Ed.2d 74 (1976) (No. 75–1805, 1975 Term). In the present setting, then, these two offenses are "the same in law and in fact." *United States v. Pacelli*, 470 F.2d 67 (2d Cir. 1972), *cert. denied*, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973); *accord, United States v. Kramer*, 289 F.2d 909 (2d Cir. 1961).

## II

The court below, however, reasoned that

> a conspiracy is entirely independent of a related substantive offense which itself involves concerted action so long as the conspiracy charged involves a larger number of participants than the substantive offense requires.

United States v. Sperling, 413 F.Supp. 845, 847 (SDNY 1976). In the context of this case, we do not believe this distinction answers the question of whether Sperling's participation in the conspiracy constituted two offenses. It appears to us to be a statement of the "third party" exception to Wharton's Rule. The gist of Wharton's Rule is that where

> the statute defining the substantive offense requires concerted action and none participated other than the necessary parties, there is no additional danger [to society due to the existence of an agreement among more than one person to violate the law] and a charge of conspiracy to violate the statute will not lie[.]

*United States v. Boyle*, 157 U.S.App.D.C. 166, 482 F.2d 755, 767, *cert. denied*, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973). It is itself an exception to the general rule that a conspiracy to commit a crime and the commission of the crime, each requiring proof of an element not required for the other, are separately and cumulatively punishable. Wharton's Rule traditionally has

---

7. The two offenses are far from congruent, however, since § 848, unlike § 846, requires that the defendant have violated the narcotics laws and that he have derived substantial income therefrom.

application to such crimes as adultery, bigamy, incest and duelling, where agreement to commit the crime is normally a prerequisite to its accomplishment. W. LaFave & A. Scott, *Handbook on Criminal Law* 492–94 (1972). The "third party" exception to Wharton's Rule allows dual punishment for the conspiracy and the object crime where more persons take part in the conspiracy than are necessary to accomplish the substantive offense.

We find the Rule and its exception inapplicable to this case. Sperling was charged with engaging in a continuing criminal enterprise in violation of the narcotics laws and with conspiracy to violate the narcotics laws, not with conspiracy to violate the continuing criminal enterprise statute itself, which would be the situation to which Wharton's Rule analysis applies—and which was the case, for example, in *Iannelli v. United States, supra.* Sperling's claim is founded on the double jeopardy clause itself.

We cannot agree with the rationale of the District Court for an additional reason. "The history of the rule against double jeopardy is the history of criminal procedure. No other procedural doctrine is more fundamental or all-pervasive." M. Friedland, *Double Jeopardy* 3 (1969). It has stood as a counterpoise on the side of the defendant against the state with its massive power and resources capable, if unchecked, of overwhelming the individual accused of a crime. *Cf. Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

Central to the doctrine is the proscription against multiple punishments for the same offense. In the middle of the Twelfth Century, Archbishop Thomas à Becket is said to have won from King Henry II a concession exempting clerks punished in the ecclesiastical courts from being punished again in the King's courts for the same transgression. He argued that the latter punishment would violate the maxim *Nemo bis in idipsum,*—no man ought to be punished twice for the same offense,—a maxim dating at least from St. Jerome's commentary in the year 391, "For God judges not twice for the same offense." M. Friedland, *Double Jeopardy, supra* at 5–6, 326–27.

When our own Bill of Rights was being drafted, "preventing multiple punishment for the same offense was foremost in the minds of the framers of the double jeopardy clause." Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 266 n. 13 (1965). And while the legislature may determine, consistently with the double jeopardy clause, that multiple punishments may be imposed for a single course of conduct, the constitutional prohibition limits the discretion of prosecutors and the courts "to cumulate convictions and punishment when the legislature's will is not explicit." *Id.* at 302, 311–12.

Thus, we are reluctant, when Congress is silent, to grant to prosecutors the power to bring about multiple punishments for a single offense, and this would follow from acceptance of the District Court's view that the mere charging of more defendants in the conspiracy count than in the continuing criminal enterprise count would render convictions on both counts subject to distinct punishments.

Moreover, even were this a Wharton's Rule case, our conclusion would not be a different one. The Supreme Court has made clear that "Wharton's Rule does not rest on principles of double jeopardy * * *. Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli v. United States, supra,* 420 U.S. at 782, 95 S.Ct. at 1292. Thus, Congressional intent to punish cumulatively both the conspiracy and the substantive offense is necessary to override the presumption that those conspiracies and substantive crimes which fall within Wharton's Rule cannot be punished more than once. In *Iannelli*—which, of course, dealt with a different statute—the Supreme Court found such Congressional intent. In this case, for this statute, we do not.

### III

We note that Congress has long manifested an unmistakable intention to

deal harshly with narcotics offenders. The Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1242, 21 U.S.C. §§ 801 *et seq.* (1970), is an exemplar of that intention. *See,* for example, H.R.Rep.No. 91–1444 (accompanying H.R.18583, the bill which eventuated in the 1970 Act), (1970) U.S.Code Cong. & Ad.News 4566, 4575:

> The reported bill provides severe criminal penalties for persons engaged in illicit manufacture or sale of controlled drugs primarily for the profits to be derived therefrom.

This attitude of Congress is well-known to the courts, and we decline the application in this case of the "rule of lenity" toward the defendant, *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), which appellant insists should guide our considerations.

> Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws.

*Gore v. United States,* 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958).

Still, we must focus our attention on the statutory provisions before us, and on the constitutional mandate against double jeopardy. "Generalities about statutory construction help us little. * * * The variables render every problem of statutory construction unique." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952).

While the legislative history of the two sections of the statute involved here is not extensive, it is clear that Congress, in creating the 1970 legislation, sought to enact a comprehensive scheme of offenses and penalties encompassing the entire field of drug abuse from individual personal use up to the direction and control of large narcotics producing and distributing enterprises. It is just these managers of the narcotics underworld that § 408 of the Act, 21 U.S.C. § 848, the continuing criminal enterprise provision, is intended to reach, and it is the only section of the 1970 Act to provide minimum mandatory sentences.

It is instructive, we believe, that as originally introduced, the continuing criminal enterprise provision dealt only with sentencing. It was an alternative to be invoked in the case of those who engaged in extensive violations of the narcotics laws and who derived substantial profit from their illicit enterprise. Requiring a minimum sentence of ten years' imprisonment and providing for the imposition of life sentences without parole, it was intended to keep certain offenders "out of circulation." As merely a sentencing provision, however, it contemplated the use of hearsay and rumor in the presentencing report without providing an opportunity for cross-examination of the declarant; it would have allowed the sentencing judge to withhold portions of the presentence report from the defendant; and it would have placed on the defendant the burden of proving that any substantial income he enjoyed was not attributable to his illegal transactions in narcotics.

Doubts about the constitutionality of these provisions of the continuing criminal enterprise sentencing proposal led to an amendment making a continuing criminal enterprise not merely a sentencing alternative but a distinct offense, thereby assuring that all its elements would have to be established in court before the offender could be subjected to its stiff penalties. Thus, concern that the sentencing provision lacked "any of the real protections afforded by a jury trial" led to the enactment of "a new and distinct offense with all its elements triable in court." ("Additional Views" of members of the House Interstate and Foreign Commerce Committee, incorporated into H.R.Rep.No.91–1444, [1970] U.S.Code Cong. & Admin.News 4566, 4650, 4651.) Far from indicating, as the Government suggests to us, that Congress intended that this new continuing criminal enterprise offense be punishable along with the conspiracy offense, this portion of the legislative history shows that what originated as a harsh sentencing alternative remained as such in the enacted statute, but with all our constitutional guaranties preserved.

IV

In dismissing Sperling's contention that conviction and sentence on § 848 precluded

sentencing on § 846, the District Court relied in large part on our decision in *United States v. Papa*, 533 F.2d 815, 823 (2d Cir. 1976), where we stated:

> This Court has recognized that prosecution under section 848 is distinct and separate from a prosecution for the conspiracy and substantive offenses that may constitute some of the evidence offered on a continuing criminal enterprise count.

This passage, however, does not support the conclusion drawn below, for that case cannot be taken as holding that sentencing under both § 846 and § 848 presents no double jeopardy problems. Since *Papa* is strongly urged upon us by the Government as controlling our decision here, we turn now to a detailed analysis of it.

Papa was convicted after a jury trial in the United States District Court for the Southern District of New York on a two-count indictment (the "Southern District indictment") charging him with (1) conspiring with five others to traffic in narcotics in violation of 21 U.S.C. § 846, and with (2) the substantive offense of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 812 and 841. He had earlier pleaded guilty to an indictment brought in the Eastern District of New York (the "Eastern District indictment") which charged him with (1) conspiring with twenty-one named co-defendants and others to traffic in narcotics in violation of 21 U.S.C. § 846, and with (2) engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.

On appeal from his Southern District conviction, Papa forcefully asserted that his earlier plea to the Eastern District indictment precluded conviction on the conspiracy count, arguing that the conspiracies charged in the two indictments were actually parts of a single conspiracy, and hence his second prosecution violated the double jeopardy clause. We rejected the claim, pointing out that the two indictments alleged different co-conspirators and different overt acts, and that "the evidence that the conspiracies were distinct is overwhelming." 533 F.2d at 821. Furthermore, of the total of sixty conspirators named in the two indictments, only two—Papa and one Anthony Passero—were named in both, and Passero's role in the events charged in the Southern District conspiracy indictment had gone virtually unestablished at the trial. We concluded that "the only personnel link between the two conspiracies besides the appellant [Papa] is tenuous at best." 533 F.2d at 822.

As part of Papa's plea bargain upon the Eastern District indictment, the count charging him with the § 848 offense of engaging in a continuing criminal enterprise was dismissed. Papa argued that this "necessarily absorbed the conspiracy and substantive offenses charged in the Southern District indictment," since they were necessary elements of the § 848 count; hence, double jeopardy prevented the Southern District prosecution. We rejected this contention as well, noting that the conspiracies charged in the two indictments were entirely independent. Furthermore, we pointed out that Papa's claims with respect to the § 848 count rested on pure speculation as to what evidence would have been offered had there been a trial on that count, and we observed that to introduce the same evidence "during trial on different offenses is entirely consistent with principles of double jeopardy." 533 F.2d at 823.

Then followed the statement relied upon by the court below. That statement does not mean that prosecution and sentencing for both § 846 and § 848 offenses will never offend double jeopardy. Indeed, in not one of the three cases cited in *Papa* after the quoted statement[8] did the court squarely consider whether imposition of sentence upon both a § 848 count and a concomitant conspiracy count constitutes double punishment for a single offense in violation of the double jeopardy clause. In short, we are of

---

8. *United States v. Sperling, supra,* at 1323 (2d Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Sisca,* 503 F.2d 1337 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); and *United States v. Manfredi,* 488 F.2d 588 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

the opinion that our decision today in no way conflicts with our decision in *Papa*.

Also cited to us as compelling an affirmance is *United States v. Jeffers, supra*, 532 F.2d 1101 (7th Cir.), *cert. granted*, 429 U.S. 815, 97 S.Ct. 55, 50 L.Ed.2d 74 (1976) (No. 75–1805, 1975 Term). As *Jeffers* seems to hold the opposite of what we decide here, we examine that case in some detail, noting at the outset that it involved a question of alleged former jeopardy arising from the fact that appellant had suffered separate convictions upon separate indictments.

Jeffers, "the head of a highly-structured narcotics distribution network," 532 F.2d at 1104 was convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 and sentenced to life imprisonment. In a separate trial he had earlier been convicted of conspiracy to violate the federal narcotics laws, in violation of 21 U.S.C. § 846, upon an indictment handed down the same day as the § 848 indictment and involving the same events.[9]

After his conviction on the conspiracy charge, and prior to his trial on the continuing criminal enterprise, Jeffers sought to dismiss the continuing criminal enterprise indictment on double jeopardy grounds, claiming that the same events were the basis of both. The trial court denied Jeffers' motion, he was convicted, and the Seventh Circuit affirmed.

The Court of Appeals had no trouble finding that the conspiracy was a lesser included offense of the criminal enterprise. Observing that traditional rules of double jeopardy would therefore require reversal of Jeffers' conviction in the latter prosecution, the court nonetheless declined to apply "this rather mechanical analysis." 532 F.2d at 1108 n.3. Rather, it went on to consider

*Iannelli v. United States, supra*, which it interpreted as "form[ing] a new double jeopardy approach towards complex statutory crimes."

> [T]he theme of the [*Iannelli*] opinion seems to be that at least in the area of complex statutory crimes, if Congress intends that two offenses be retained as independent offenses, prosecution under both is permissible.

*Id.* at 1108. The panel read *Iannelli* as changing the *Blockburger* test [10] from a principle of double jeopardy into a tool of statutory analysis for interpreting whether Congress intended to impose multiple punishments for multiple offenses arising from a single act.

■ We need not decide whether we agree with this analysis, however, for we are of the opinion, set out above, that Congress did not intend §§ 846 and 848 to be offenses separately and simultaneously punishable where the facts on which the violations rest are the same.[11]

We have carefully scrutinized the legislative history, and, with the teachings of *Iannelli* in mind, we have reached the conclusion that, unlike the statute in *Iannelli* (18 U.S.C. § 1955), Congress did not require concerted activity of five or more persons as an element of § 848 solely "to restrict federal intervention to cases in which federal interests are substantially implicated," 420 U.S. at 789, 95 S.Ct. at 1296, but, rather, Congress intended this provision as an alternative offense, one available to be presented against leaders of significantly large conspiratorial narcotics enterprises.

Our conclusion is buttressed by the severe penalty provisions incorporated in § 848 and its disallowance of suspended sentences, probation and parole for those convicted.

---

**9.** The Government sought to consolidate the two indictments so as to have one trial, but Jeffers objected, contending "that conspiracy and continuing criminal enterprise were not 'the same' and that great prejudice would result to [him] in the criminal enterprise charge by bringing in evidence as to co-conspirators in the conspiracy which did not directly inculpate [him]." 532 F.2d at 1106. Consolidation was denied.

**10.** *Ante*, pp. 1054–1055.

**11.** We are unable to agree with the rationale set forth at pp. 1110–11 of the *Jeffers* opinion, where the court concluded that §§ 846 and 848 "are directed at quite different results" and were intended by Congress to be separately punishable. We read the legislative history differently.

We are unable to conclude that Congress, concerned as it rightly is with eradicating the scourge of traffic in illicit drugs, intended that a person convicted of being the leader of a narcotics conspiracy could be sentenced to life imprisonment without parole, and then also sentenced again for being a member of the very gang he led.

For these reasons, we vacate appellant Sperling's sentence [12] on Count One, the conspiracy count, but we vacate only the sentence, for his conviction on Count One remains unaffected.[13] We, of course, leave undisturbed Sperling's sentence and fine on Count Two and in the unlikely event that sometime in the future his conviction on Count Two shall be overturned, the sentence imposed on the unaffected conviction on Count One is to be reinstated. Cause remanded to District Court.

VAN GRAAFEILAND, Circuit Judge (dissenting):

One of the fundamental concepts of the law of conspiracy is that there is no such thing as a one-man conspiracy. *United States v. Gisehaltz*, 278 F.Supp. 434, 437 (S.D.N.Y.1967). For this reason, one member of an alleged conspiracy cannot be convicted if all other members are acquitted. *United States v. Peterson*, 488 F.2d 645, 651 (5th Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974); *United States v. Shuford*, 454 F.2d 772, 779 (4th Cir. 1971); *Herman v. United States*, 289 F.2d 362, 368 (5th Cir.), *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). 21 U.S.C. § 848 proscribes a one-man offense. A defendant can be indicted alone and convicted alone. Conviction requires no proof of the agreement which is implicit in every conspiracy. *See United States v. Borelli*, 336 F.2d 376, 384 (2d Cir. 1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965).

I respectfully disagree with the majority's position that concerted action is the equivalent of conspiratorial action. A conspiracy requires "preconcert and connivance". *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir. 1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 & 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976). Concerted action, on the other hand, may result from duress rather than agreement. *Cf. United States v. Tierney*, 424 F.2d 643, 646 (9th Cir.), *cert. denied*, 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970). It may occur without criminal intent on the part of one or more of the parties involved. *See Baker v. United States*, 393 F.2d 604, 609 (9th Cir.), *cert. denied*, 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968); *United States v. Lester*, 363 F.2d 68, 72–73 (6th Cir. 1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967); *Boushea v. United States*, 173 F.2d 131, 134 (8th Cir. 1949). It may be simply the joint activity associated with aiding and abetting. *United States v. Hodorowicz*, 105 F.2d 218, 220 (7th Cir.), *cert. denied*, 308 U.S. 584, 60 S.Ct. 108, 84 L.Ed. 489 (1939); *Jamail v. United States*, 55 F.2d 216, 217 (5th Cir. 1932). One who "aids, abets, counsels, commands, induces or procures" the commission of a crime is punishable as a principal. 18 U.S.C. § 2; *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938). This, in substance, is the conduct prohibited by § 848. Conspiracy to commit a substantive offense and aiding and abetting its commission are separate and distinct crimes, and a defendant may be convicted of both. *United States v. Tropiano*, 418 F.2d 1069, 1083 (2d Cir. 1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970).

The District Court instructed the jury, without exception, that before appellant

**12.** The double jeopardy analysis is applicable also to the $50,000 fine imposed on Sperling, see *American Tobacco v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), and we set it aside also.

**13.** Appellant does not contest the propriety, and does not claim error in the fact that he was indicted, tried, and convicted on both the conspiracy count, § 846, and the continuing criminal enterprise count, § 848. His single contention upon this appeal, a contention with which we agree, is that, having been convicted for committing both crimes, he could not be punished on both convictions but only on one. *United States v. Stewart*, 513 F.2d 957, 960 (2d Cir. 1975); *United States v. Pravato*, 505 F.2d 703, 705 (2d Cir. 1974); *Gorman v. United States*, 456 F.2d 1258 (2d Cir. 1972).

could be convicted of violating § 848, the jury must find that he committed the substantive offenses charged in Counts 8, 9 and 10 of the indictment; that these were part of a continuing series of violations by appellant; that he occupied a supervisory position or position of management; and that he obtained substantial income from the violations. Proof of none of these was required for conviction under the conspiracy count. The two offenses are not, therefore, "the same in law and in fact." Because I conclude also that a conspiratorial agreement is not an essential element of a § 848 violation, I cannot concur in the majority's holding that the sentences for these disparate offenses constituted double jeopardy.

I therefore respectfully dissent.