Rita GOTTESMAN, Maria Mattiello, and Paul J. Peyser, Plaintiffs,

v.

GENERAL MOTORS CORPORATION and E. I. du Pont de Nemours and Company, Defendants.

United States District Court
S. D. New York.

Oct. 7, 1963.

See also 221 F.Supp. 488.

Netter & Netter, New York City, for plaintiffs; Gordon, Brady, Caffrey & Keller, O'Connor & Farber, Richard Netter, Edward A. Rothenberg, Henry L. Bayles, Abbott Gould and Jay Miller, New York City, of counsel.

Frank H. Gordon, New York City, and Daniel M. Gribbon, Washington, D. C., for defendant E. I. du Pont de Nemours & Co.; Henry P. Sailer, Alvin Friedman, Washington, D. C., Irving S. Shapiro, Wilmington, Del., and Covington & Burling, Washington, D. C., of counsel.

George A. Brooks, New York City, for defendant General Motors Corp.; Edward B. Wallace, New York City, of counsel.

METZNER, District Judge.

Plaintiffs are minority stockholders of General Motors Corporation who have based this derivative action against du Pont and General Motors primarily on matters involved in the government antitrust suit against these corporations and U. S. Rubber Co. United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). The final judgment in that case, entered on March 1, 1962, dismissed without prejudice the claims alleging violations of the Sherman Act, and adjudicated that du Pont's acquisition of General Motors stock violated section 7 of the Clayton Act.

Du Pont argues that on the trial of the government suit General Motors strongly resisted any claims of violations of the Sherman Act. It urges that General Motors maintained throughout that trial that the stock relationship between du Pont and General Motors "had not resulted, and did not at the time of suit

result, in any restraint upon the relations of General Motors with any supplier or potential supplier of products it purchased." Thus du Pont contends that any rights these plaintiffs may have are derived through General Motors, and plaintiffs are precluded from asserting the Sherman Act violations claimed in this suit.

The question of the application of the doctrine of preclusion against inconsistent positions to the plaintiffs' Sherman Act claims arose in connection with a discussion of the applicability of section 5(a) of the Clayton Act (15 U.S.C. § 16(a)) to the judgment obtained in the government suit. That section refers to the estoppel effect of such judgment, and the use to which the judgment may be put by plaintiffs in this private antitrust litigation. The opinion of this court dated September 18, 1963 disposed of the section 5(a) question.

■■■ The doctrine of preclusion against inconsistent positions is broader than, and must be distinguished from, the doctrine of collateral estoppel. The latter doctrine makes conclusive upon parties, in subsequent suits between them, any determination which was essential to a judgment in a prior suit and was actually litigated and determined therein. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); Restatement, Judgments § 68(1). Collateral estoppel as with res judicata has as its purpose the avoidance of time wasting relitigation of the same cause of action. Although the preclusion doctrine has the same effect of depriving one of his right to assert a claim or defense which otherwise would be available to him, it is based on a different rationale. Preclusion against inconsistent positions is designed to prevent a litigant from leading a court to find a fact one way in one proceeding, and then simply because his interests have changed lead the court to find another way in a subsequent proceeding. McAulsan v. Union Trust Co., 46 R.I. 176, 125 A. 296 (1924). Having received a benefit in the first trial, a party is precluded from changing his position to obtain another benefit in the second trial. Thus the preclusion doctrine as distinguished from collateral estoppel and res judicata, may be invoked by a person not a party to the first suit against one who was a party in that suit. Rand v. Gillette, 199 N.C. 462, 154 S.E. 746 (1930). So it was that a county was precluded from urging that certain bonds were not the property of a bank where in a prior suit the county had successfully defended on the ground that the bonds were the property of the bank. Queenan v. Mays, 90 F.2d 525 (10th Cir., 1937). Likewise, a guest in a car was precluded from urging her driver's recklessness where plaintiff had previously effected a settlement of her lawsuit against the owner of the other vehicle involved in the accident wherein she alleged that her driver had exercised due care. Loomis v. Church, 76 Idaho 87, 277 P.2d 561 (1954). These two cases are obvious examples of the application of this preclusion doctrine.

■■■ Since the preclusion doctrine does have the same operative effect as res judicata or collateral estoppel, it has been suggested that preclusion should only be applied when a party's former action clearly justifies foreclosing a showing of the truth. Of course the failure to apply the doctrine would not prevent the introduction in evidence of prior inconsistent testimony for the purpose of attacking credibility. 59 Harv. L.Rev. 1132, 1135 (1946). Furthermore it is not clear whether the application of the doctrine is not governed by the type of suit. For example, in Nancy Ann Storybook Dolls v. Dollcraft Co., 197 F.2d 293 (9th Cir.), cert. denied, 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952), the court held, without further elaboration, that the doctrine was inapplicable in trade-mark cases.

The issue confronting this court is whether the doctrine should be applicable to stockholder derivative actions. The instant derivative suit has a dual aspect. On one hand it seeks vindication of the corporation's right, and hence recog-

nizes the corporation as a legal entity from whom the stockholder derives his cause of action. On the other hand, it seeks recovery based on the individual shareholder's right to act on behalf of the corporation which refused to act on its own behalf. In this regard the action recognizes a conflict of interest between corporate management and the stockholders of the corporation. 2 Hornstein, Corporation Law and Practice ¶ 711 (1959). This adverse interest between the management of General Motors and the plaintiffs has been recognized in a prior proceeding in this case. Gottesman v. General Motors Corp., 171 F. Supp. 661 (S.D.N.Y.), appeal dismissed, 268 F.2d 194 (2d Cir., 1959). See also Rogers v. American Can Co., 305 F.2d 297 (3d Cir., 1962); Blake, The Shareholders' Role in Antitrust Enforcement, 110 U.Pa.L.Rev. 143 (1961).

■ The underlying rationale of the preclusion doctrine assumes a single party urging an inconsistent position solely because his interests have changed. For the purpose of the preclusion doctrine, the minority stockholders and the corporation should not be considered a single party. The minority stockholders did not control General Motors' defense in government litigation. The minority stockholders did not attempt to lead the court to find a fact any particular way in that litigation. This is not a case of one party shifting his position with his shifting interests. Rather, it is a case of a party being heard for the first time, whose interests are and have been at odds with those in control of the defense in the government litigation.

More specifically the beneficial effects that flow from derivative actions to enforce the antitrust laws would be hampered if the doctrine of preclusion were made applicable. See generally, Blake, supra. Minority stockholders would be bound by the actions of management, a result contrary to the theory of derivative suits.

■ Moreover, it is undisputed that the preclusion doctrine is not applicable if the party has taken a position in the first litigation by fraud or duress. Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956). Plaintiffs contend that du Pont, by virtue of its stock ownership in General Motors, was able to control General Motors' defense to the government litigation. To apply the preclusion doctrine against these charges would amount to a form of summary judgment.

The doctrine of preclusion against inconsistent positions is not available to du Pont.

So ordered.