Herbert SPERLING, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 1042, Docket 82–2022.

United States Court of Appeals,
Second Circuit.

Argued May 21, 1982.

Decided Oct. 22, 1982.

Rehearing and Rehearing En Banc
Denied Dec. 20, 1982.

Gerard E. Lynch, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., and Kate Stith Pressman, Asst. U.S. Atty., New York City, on the brief), for respondent-appellee.

Alan M. Dershowitz, Cambridge, Mass. (Nathan Z. Dershowitz and Mark D. Fabiani, New York City, on the brief), for petitioner-appellant.

Before TIMBERS, VAN GRAAFEILAND and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

For the third time appellant Sperling (hereinafter, "appellant") asks us to consider alleged errors in his 1973 conviction for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1976). This is the second time appellant has appealed to this Court from the denial of his petitions pursuant to 28 U.S.C. § 2255 (1976), in both instances raising identical claims. We find his claims no more persuasive now than before. We affirm.*

I.

Appellant and seventeen others were indicted on May 11, 1973 on various counts charging violations of the federal narcotics laws. Count I charged appellant with conspiracy to violate the narcotics laws. 21 U.S.C. § 846 (1976). Count II charged him with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1976). Counts VIII, IX, and X charged him with possessing heroin and cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (1976). On July 12, 1973, after a four week jury trial, Milton Pollack, *District Judge,* appellant was convicted on all counts upon which he was charged. On September 12, 1973, Judge Pollack sentenced appellant to life imprisonment on Count II, 30 years on

Counts I, VIII, IX and X (concurrent), 6 years special parole, $100,000 fine on Count II, and $200,000 fine on all other counts.

On their direct appeals to this Court, appellant and his codefendants claimed, inter alia, that the government failed to comply with the Jencks Act, 18 U.S.C. § 3500 (1976), in that it failed to provide them with a letter written by witness Barry Lipsky which might have had an impact on his credibility. As to this claim, we agreed and reversed the convictions on the substantive counts (Counts VIII, IX, and X), holding that there was insufficient evidence other than Lipsky's testimony to sustain the convictions on those counts. *United States v. Sperling,* 506 F.2d 1323, 1335 (2 Cir. 1974) ("*Sperling I*"), *cert. denied,* 420 U.S. 962 (1975). We remanded the case for a new trial on those counts.

In *Sperling I,* we affirmed appellant's convictions on the conspiracy count (Count I) and on the continuing criminal enterprise count (Count II), holding that appellant's convictions on those counts were not affected by the absence of the Lipsky letter. 506 F.2d at 1335–37 and 1337 n. 18. With respect to the conspiracy count, we held:

"In short, we are left with the firm conviction that, in view of the substantial, independent and corroborating evidence linking the Pacelli and Sperling narcotics operations, the availability of the Lipsky-Feffer letter for use on cross-examination of Lipsky would not have had any effect on the jury's verdict with respect to the conspiracy convictions of Sperling, Goldstein and Schworak, including their participation in the Pacelli-Sperling conspiracy." *Id.* at 1337 (footnotes omitted).

With respect to the continuing criminal enterprise count, we held:

"Moreover, Sperling's conviction of engaging in a continuing criminal enterprise involving hard narcotics was based on evidence wholly independent of Lipsky's testimony." *Id.* at 1335.

---

\* Since I agree with Judge Van Graafeiland's concurring opinion, pages 227–29, *infra,* and he agrees with mine, the two opinions together constitute the majority view of this court.

We also held, with respect to the continuing criminal enterprise count, that the "evidence was more than sufficient to sustain his conviction under this count." *Id.* at 1344 (footnote omitted). We remanded the case to the district court for resentencing on Count I, since that sentence had been made concurrent with the sentences on the reversed substantive counts. The Supreme Court denied certiorari. 420 U.S. 962 (1975).

On remand, the district court on May 17, 1976 resentenced appellant on Count I to 30 years imprisonment and a $50,000 fine, the sentence on Count I to run concurrently with the life sentence and $100,000 fine previously imposed on Count II. 413 F.Supp. 845. On appeal from that judgment, we vacated the sentence imposed on Count I on the ground that the conspiracy count was a lesser included offense in the continuing criminal enterprise charge. We held, however, that "in the unlikely event that sometime in the future his conviction on Count Two shall be overturned, the sentence imposed on the unaffected conviction on Count One is to be reinstated." *United States v. Sperling,* 560 F.2d 1050, 1060 (2 Cir. 1977) (*"Sperling II"*).

Rather than retrying appellant on the three substantive counts, the government applied for and, on May 16, 1975, was granted an order of nolle prosequi as to those counts. The district court, on July 24, 1975, denied appellant's motion to vacate the nolle prosequi order or, in the alternative, to dismiss the counts with prejudice. We dismissed the appeal from that order on January 26, 1976.

On July 10, 1978, appellant filed his first § 2255 petition, alleging that the absence of guilty verdicts on Counts VIII, IX and X rendered the continuing criminal enterprise conviction invalid. On August 31, 1978, Judge Pollack denied the petition in a brief opinion, stating that the continuing criminal enterprise conviction was supported by more than sufficient evidence. We affirmed by order. 595 F.2d 1209 (2 Cir. 1979) (mem.) (*"Sperling III"*). The Supreme Court denied certiorari, the petition to that Court having raised essentially the same issues which had been raised in and rejected by the two lower courts. 441 U.S. 947 (1979).

On October 13, 1981, Sperling filed his second § 2255 petition, alleging that, by affirming his conviction on Count II despite having vacated the convictions on Counts VIII, IX, and X, this Court had sanctioned his conviction of a crime although there was no proof that he had committed it. The claims raised in appellant's first and second § 2255 petitions are essentially identical. The only difference between the two is that appellant, who was represented by retained counsel on his first petition, was represented by different retained counsel on his second petition. Appellant's counsel on the instant appeal conceded that he was making the same argument that was made on appeal from the denial of the first § 2255 petition, adding, "the argument was made by different counsel."

Judge Pollack, in a comprehensive, well reasoned opinion dated January 22, 1982, 530 F.Supp. 672, denied appellant's second § 2255 petition. From the order entered thereon, the instant appeal was taken.

## II.

A court may give controlling weight to the determination of a prior § 2255 petition if: (1) the same ground presented in the subsequent petition was determined adversely to the petitioner on the prior petition; (2) the prior determination was on the merits; and (3) the ends of justice would not be served by reaching the merits of the subsequent petition. *Sanders v. United States,* 373 U.S. 1, 15 (1963).

We hold that the first requirement clearly is satisfied here. The same arguments were presented in appellant's prior § 2255 petition before the district court, this Court, and the Supreme Court. In each instance, the identical arguments made here were rejected.

We also hold that the second requirement is satisfied. The issue on the first petition, as on the instant one, was whether the

judgment vacating the convictions on the substantive counts rendered the continuing criminal enterprise conviction constitutionally infirm. Judge Pollack, in denying the first petition, held that the conviction was not rendered infirm. We affirmed. The Supreme Court denied certiorari.

■ This brings us to the third requirement. In deciding whether the ends of justice require reaching the merits, we must consider the repetitious nature of this petition, especially in view of the clear mandate of Congress in 28 U.S.C. § 2255, ¶ 5 (1976) that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." Although there is no res judicata effect with respect to prior determinations of repetitious § 2255 petitions, a court should be less receptive to a claim when exactly the same claim previously was decided against a petitioner. For example, in *Alessi v. United States,* 653 F.2d 66, 69 (2 Cir. 1981), a case involving a repetitious § 2255 petition, we held that there was no reason why the ends of justice required reaching the merits of claims which so recently had been held to be without merit by the district court and by our Court. "Plainly there must be an end to litigating these claims several times decided by the district court and by us." *Id.* Similarly, the instant case involves a successive, repetitious petition without any new legal or factual claims being raised for setting aside the conviction. There must be an end to the instant litigation at some point. We hold, so far as this Court is concerned, that that point has now been reached.

Appellant contends that the merits should be reached because there has been an intervening change in the law, citing *Dunn v. United States,* 442 U.S. 100 (1979), which held that the court of appeals had erred in affirming a perjury conviction on grounds other than those charged. That case did not change the law. It merely emphasized the "firmly established" rule that a defendant has a right "to be heard on the specific charges of which he is accused." *Id.* at 106. We did not affirm Sperling's conviction on charges other than those on which he had been indicted and convicted.

Appellant further contends that the merits should be reached because both the direct appeal and the first § 2255 petition were incorrectly decided. He argues that, by vacating the convictions on the substantive counts, we removed the necessary predicate for conviction on the continuing criminal enterprise count. Although we need not discuss the merits because we believe that our earlier dispositions were correct, we believe it is appropriate briefly to explain more fully our holding in *Sperling I.*

■ The instant controversy is triggered by the district court's instruction at the 1973 trial that, to convict appellant on the § 848 count, the jury must have been convinced beyond a reasonable doubt that he committed the offenses charged in the substantive counts. That charge was unnecessarily favorable to appellant. The law requires merely that there be evidence that the defendant committed three substantive offenses—even if not charged in separate indictments—to provide the predicate for a § 848 conviction. *See United States v. Sisca,* 503 F.2d 1337, 1345–46 (2 Cir.) (affirming a § 848 conviction although there were no indictments for substantive offenses), *cert. denied,* 419 U.S. 1008 (1974). Absent the linking of § 848 to the three substantive counts, there clearly was sufficient evidence to support the § 848 conviction even without the substantive counts.[1]

---

1. We summarized this independent evidence in *Sperling I:*

"The record shows that Sperling was the operational kingpin of a highly organized, structured and on-going narcotics network. Testimony by Conforti, Cecile Mileto and Vance, as well as visual and electronic surveillance, clearly established that during the period from May 1, 1971 through April 13, 1973 Conforti, Louis Mileto, Goldstein, Schworak, Spada and many others were engaged in Sperling's narcotics enterprise directly under his supervision. There was evidence that on more than 26 occasions some or all of these individuals mixed heroin for Sperling. Each of these mixing sessions involved possession, diluting and distributing

Since the trial judge linked the § 848 count to the substantive counts, however, we were precluded in *Sperling I* from looking beyond the three substantive counts to hold that the jury convicted on the basis of evidence other than the substantive counts. *See Dunn v. United States, supra.* Rather, we affirmed the § 848 conviction *not* on evidence other than that in support of the substantive counts, but precisely on the evidence presented in support of those counts. This was appropriate because of the basis for our decision in vacating the convictions on the substantive counts.

We vacated the convictions on the substantive counts because the government failed to comply with the Jencks Act, 18 U.S.C. § 3500 (1976), which requires the government to turn over statements of a government witness relating to that witness' trial testimony. That was a decision not based on *constitutional* grounds, however, since the Jencks Act is a *statutory* requirement, not a constitutional one. *See United States v. Augenblick,* 393 U.S. 348, 356 (1969) ("our *Jencks [v. United States,* 353 U.S. 657 (1957)] decision and the Jencks Act were not cast in constitutional terms"); *see also Palermo v. United States,* 360 U.S. 343, 353 n. 11 (1959).

If the failure to comply with the Jencks Act were a constitutional error—e.g. insufficiency of the evidence—the 1973 convictions would have been reversed outright and a new trial would have been barred on double jeopardy grounds. Here, however, vacating the convictions on the substantive counts and remanding the cases for a new trial was appropriate, *see, e.g., Goldberg v. United States,* 425 U.S. 94, 111–12 (1976), because there was no constitutional infirmity in those convictions.

Since the Jencks Act error was technical and statutory, not constitutional, it was not inconsistent for us to have vacated the convictions while still holding that the jury could have found beyond a reasonable doubt that appellant committed [2] those substantive offenses, thus providing the predicate for the § 848 conviction. In short, in vacating the convictions on the substantive counts on statutory grounds, we did not hold that it was constitutionally impermissible for the jury to have considered the Lipsky testimony in finding appellant guilty of the § 848 violation. Although the Jencks Act required that the testimony not be considered in ruling on the validity of the substantive offenses, it did not require that it be ignored with respect to the § 848 count. Thus, this was consistent with our statement in *Sperling I* that "[w]e find insufficient evidence, *other than Lipsky's testimony,* to sustain the convictions of any of the appellants for possession and distribution of cocaine and heroin as charged in substantive Counts Three through Ten ...." 506 F.2d at 1335 (emphasis added).[3]

Affirmed.

VAN GRAAFEILAND, Circuit Judge, joined by Timbers, Circuit Judge, concurring:

It is a truism of the law that effective justice can only be achieved through the cooperative effort of those who seek it and those who dispense it. For this reason, litigants should not be permitted to play "fast and loose with the courts" by taking inconsistent positions in related proceedings. *Selected Risks Insurance Co. v. Kobelinski,* 421 F.Supp. 431, 434 (E.D.Pa.1976) (quoting *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953)). Because I believe that this is what appellant is doing in the

from a half kilo to three kilos of pure heroin." 506 F.2d at 1344. We held that this evidence was more than sufficient to sustain appellant's conviction under the continuing criminal enterprise count. *Id.*

2. We note that the district court instructed the jury that it must find beyond a reasonable doubt that appellant *committed* the substantive offenses, not that he was *convicted* of them.

Thus the § 848 conviction was not rendered invalid by vacating the substantive convictions.

3. We find it neither necessary nor appropriate to comment on a post-argument communication addressed to us by appellant's counsel regarding an incident alleged to have occurred some two weeks after the argument in the instant case. We decide this case on the record before us.

instant case, I write separately to indicate my accord with Judge Timbers, in whose well-reasoned opinion I fully concur.

Five years ago, appellant argued in this Court that his sentence on the conspiracy count should be vacated because the conspiracy was a lesser included offense in the continuing criminal enterprise and punishment under both counts constituted double jeopardy. *United States v. Sperling,* 560 F.2d 1050, 1053 (2d Cir. 1977). Appellant was fully familiar with the well-established doctrine, sometimes referred to as "judicial estoppel", which precludes a litigant from leading a court to find one way in one proceeding and then, because his interests have changed, leading the court to find another way in a subsequent proceeding. Indeed, in his brief on that appeal, appellant quoted the doctrine as it is set forth in *In re Johnson,* 518 F.2d 246, 252 (10th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975).

With complete awareness of where he was going, appellant argued that, because of his conviction on the continuing criminal enterprise count, his sentence on the conspiracy count must be vacated. Appellant assured the Court that "[i]f Sperling prevails he will still be saddled with a sentence of life without parole." On that ground, and on that ground alone, the 1977 panel vacated appellant's sentence on the conspiracy count. 560 F.2d 1060. Having accomplished this, appellant is now back in our Court seeking to have his continuing criminal enterprise conviction vacated, thus knocking the props from under the argument which he presented successfully on his former appeal.

Moreover, the grounds upon which he bases his motion to vacate are inconsistent with his former arguments directed to the conspiracy count. Sperling's role in the conspiracy, which ran from May 1, 1971 to mid-April 1973, was described in our 1974 opinion as follows:

> Evidence concerning the activities of Sperling and the Sperling branch of the conspiracy was adduced primarily through the testimony of Joseph Confor-

ti, a former member of the conspiracy. Conforti's testimony, corroborated by that of Cecile Mileto and Zelma Vance, established that 13 of the defendants and 2 of the co-conspirators named in the indictment were participants in the narcotics operations directed by Sperling. These witnesses described approximately 69 meetings, conversations, drugs sales or transfers beginning in early 1971 and continuing through April 1973 involving members of the Sperling group. As with the Pacelli branch of the conspiracy, each of Sperling's workers had a definite role in the conspiracy, including Goldstein and Schworak who delivered narcotics at Sperling's direction. Sperling supervised and directed the purchase, processing and sale of narcotics within his sphere of control.

(506 F.2d at 1330–31).

On his 1977 appeal, appellant argued that the conspiracy and the continuing criminal enterprise occupied the same time span, that the persons who allegedly acted in concert to commit multiple violations of the narcotics laws were also named as conspirators in the conspiracy count, and that the objects of the conspiracy and the continuing criminal enterprise were the same, *i.e.,* the violation of 18 U.S.C. § 841. Appellant stated in his brief:

> Thus the Court told the jury that, as to Count 1, Sperling commanded the services of *six particular persons,* and that, as to Count 2, he occupied a position of organizer, supervisor and manager of the *same six persons.* This effectively cemented the merger of Counts 1 and 2, as to Sperling, for punishment purposes upon conviction. (emphasis in original)

Today, however, appellant argues that he stands convicted of "criminal acts not charged at trial, and never found by a jury." I agree with Judge Timbers that this argument should be rejected on the merits. I also agree that there is no need to reach the merits. Whether we base our holding on a theory of estoppel, waiver, preclusion, or abuse of writ, we should not permit such piecemeal, inconsistent, and

mutually exclusive attacks on a judgment of conviction as have occurred in this case.[1] For civil cases applying one or more of these concepts, see *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895), *Roth v. McAllister Bros., Inc.,* 316 F.2d 143, 145 (2d Cir. 1963), *Hart v. Mutual Ben. Life Ins. Co.,* 166 F.2d 891, 894 (2d Cir. 1948), *Smith v. United States,* 466 F.2d 535, 536 (6th Cir. 1972), and *Gottesman v. General Motors Corp.,* 222 F.Supp. 342, 344 (S.D. N.Y.1963), *cert. denied,* 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964). For criminal cases, see *United States v. Kramer,* 289 F.2d 909, 919–20 (2d Cir. 1961), *United States v. Gremillion,* 464 F.2d 901, 906–07 (5th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972), and *Salta v. United States,* 44 F.2d 752, 753 (1st Cir. 1930). For habeas corpus cases, see *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir. 1975), *Bryans v. United States,* 374 F.2d 505, 506 (5th Cir. 1967), *cert. denied,* 387 U.S. 903, 87 S.Ct. 1705, 18 L.Ed.2d 639 (1967), and *Crawford v. Cox,* 307 F.Supp. 732, 736 (W.D.Va.1969).

KEARSE, Circuit Judge, dissenting:

With all due respect to the majority, I must dissent. I do so because I believe the claim made by Sperling in his present application under 28 U.S.C. § 2255 (1976), which he concedes is the same claim presented in his prior § 2255 application, is a valid constitutional claim that should be addressed on its merits and should be upheld.

## A. *The Nature of Sperling's Claim*

Sperling was convicted on five counts of an indictment, to wit, of conspiring to violate the narcotics laws, in violation of 21 U.S.C. § 846 (1976) (count 1); of engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (1976) (count 2); and of possessing heroin and cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (1976) (counts 8, 9, and 10). As to count 2, the jury had been instructed that in order to find Sperling guilty of a continuing criminal enterprise under § 848, it must first find him guilty under counts 8, 9, and 10 of the indictment. (Tr. 4139, 4140.)

On appeal by Sperling and his codefendants, this Court reversed the convictions on counts 8, 9, and 10 on the ground that the government had failed to disclose, pursuant to the Jencks Act, 18 U.S.C. § 3500 (1976), a letter that might have been used to impeach the government's key witness, Barry Lipsky. *United States v. Sperling,* 506 F.2d 1323, 1332–35 (2d Cir. 1974) (*"Sperling I"*), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). We ruled that without the Lipsky testimony the evidence was insufficient for the jury to find Sperling or his codefendants guilty on counts 8, 9, and 10. *Id.* at 1335. We therefore remanded these counts for a new trial, with the Jencks Act material disclosed.[1] We upheld Sperling's conviction on count 2, however, stating that

> . . . Sperling's conviction of engaging in a continuing criminal enterprise involving hard narcotics was based on evidence wholly independent of Lipsky's testimony.

*Id.*

Sperling's claim on his § 2255 application is that because the jury had been instructed

---

**1.** On June 3, 1977, I sent a memo to Judges Waterman and Motley, the panel majority in *United States v. Sperling,* 560 F.2d 1050, in which I said:

> If my crystal ball is working properly, I can see [Sperling] moving to dismiss the section 848 count as soon as the conspiracy count is gone.

It was that memo which prompted Judge Waterman to provide for reinstatement of the conspiracy sentence in the "unlikely event" that Sperling's conviction on the continuing criminal enterprise count should be vacated. If this "unlikely event" were to occur, I wouldn't need a crystal ball to predict what would happen next. Sperling's counsel has already indicated that, if successful on this appeal, he will fight any attempt to reinstate Sperling's sentence on the conspiracy count.

**1.** The pertinent Lipsky letter had come to Sperling's attention between the time of trial and the appeal.

On remand, the government retried other defendants on some of the substantive counts but chose not to retry Sperling on counts 8–10.

that it must find him guilty on counts 8–10 in order to convict him on count 2, our setting aside the verdicts on counts 8–10 eliminated the mandated predicate for the jury's verdict of guilty on count 2. He claims that we denied him due process by looking to evidence of acts other than those charged in counts 8–10 as support for the conviction under count 2, because we thereby sustained his conviction on the basis of facts different from those on which the jury had been instructed to rest its verdict on count 2.

### B. *The Merits of Sperling's Claim*

Notwithstanding the majority's interpretations of the action taken in *Sperling I,* Sperling's contention that that decision affirmed his conviction on count 2 on a basis as to which the jury had not been instructed appears to be accurate.

At the close of trial the jury was instructed that it could not find Sperling guilty of a continuing criminal enterprise under count 2 unless it found him guilty of the violations charged in counts 8–10. The court's instructions on count 2 were, in pertinent part, as follows:

> Before you can find the defendant Herbert Sperling guilty of the crime charged in the 2nd count of the indictment you must be convinced beyond a reasonable doubt that . . . :
>
>> . . . [h]e committed the offenses charged in counts 8, 9 and 10 of this indictment.
>>
>> . . . .
>>
>> . . . [Y]ou must be satisfied that Herbert Sperling is guilty under counts 8, 9 and 10
>>
>> . . . .

(Tr. 4139, 4140.) Counts 8–10 alleged quite specific acts. Count 8 charged that Sperling and others distributed, and possessed with intent to distribute, one kilogram of cocaine in July 1971. Count 9 charged that Sperling and others distributed, and possessed with intent to distribute, two kilo-

grams of heroin in November 1971. Count 10 charged that Sperling and others distributed, and possessed with intent to distribute, one kilogram of cocaine in December 1971.

Apparently the only evidence of these alleged acts of July, November, and December 1971 was the testimony of Lipsky, for in reversing the convictions on counts 8–10, after ruling Lipsky's testimony inadmissible without the disclosure of Jencks Act material, we stated as follows:

> We find insufficient evidence, other than Lipsky's testimony, to sustain the convictions of any of the appellants for possession and distribution of cocaine and heroin as charged in substantive Counts Three through Ten; indeed, we do not understand the government to claim that there is any evidence to corroborate Lipsky's testimony as to these counts.

506 F.2d at 1335. Logically, therefore, in light of the explicit instructions to the jury not to convict on count 2 unless it was satisfied beyond a reasonable doubt of Sperling's guilt on counts 8–10, it would seem that we would have set aside the conviction on count 2 as well. If the jury was not entitled to find Sperling guilty on counts 8–10, it was not entitled, under the court's instructions, to find him guilty on count 2.

*Sperling I* nevertheless upheld the conviction on count 2, resting the affirmance on evidence of violations other than the acts alleged in counts 8–10. Thus, we ascribed the count 2 conviction to "evidence wholly independent of Lipsky's testimony"—*i.e.,* evidence that we had just noted did not corroborate the Lipsky testimony as to counts 8–10.[2] *Id.* This other evidence supporting count 2, and the legal framework within which it was viewed in *Sperling I,* was described as follows:

> To establish a violation of § 848, it was incumbent upon the government to prove that Sperling occupied a position as or-

---

**2.** Neither Sperling nor the government had addressed the effect that a reversal of the convictions on counts 8–10 would have on the count 2

conviction in light of the jury charge on count 2.

ganizer or a managerial or supervisory position with respect to a continuing narcotics trafficking operation in concert with five or more other persons, and that he received substantial income or resources from the operation.

The record shows that Sperling was the operational kingpin of a highly organized, structured and on-going narcotics network. Testimony by Conforti, Cecile Mileto and Vance, as well as visual and electronic surveillance, clearly established that during the period from May 1, 1971 through April 13, 1973 Conforti, Louis Mileto, Goldstein, Schworak, Spada and many others were engaged in Sperling's narcotics enterprise directly under his supervision. There was evidence that on more than 26 occasions some or all of these individuals mixed heroin for Sperling. Each of these mixing sessions involved possession, diluting and distributing from a half kilo to three kilos of pure heroin. Such evidence was more than sufficient to sustain his conviction under this count.

*Id.* at 1344 (footnote omitted).

Undoubtedly this evidence would have sufficed to sustain Sperling's conviction on count 2 if the jury had properly been given general instructions along the lines set forth in the first paragraph of the quoted passage.[3] The jury was not, however, given such general instructions. Rather, it was told that it could convict Sperling on count 2 only if it found beyond a reasonable doubt that he was guilty of having possessed and distributed one kilogram of cocaine in July 1971 and in December 1971, and two kilograms of heroin in November 1971; and since this Court then sustained the count 2 conviction only on the basis of evidence that Sperling was kingpin of an ongoing narcotics conspiracy in which several individuals frequently mixed various amounts of heroin for Sperling between May 1971 and April 13, 1973—evidence that we had ruled insufficient to prove Sperling's specifically alleged possession or distribution in July, November, or December 1971—I am forced to conclude that this Court affirmed Sperling's count 2 conviction on a basis other than that on which the jury had been instructed to rest its decision.[4]

The majority's palliative for this fundamental defect is to state that the trial court's instructions to the jury with respect to count 2 were more favorable to Sperling than was required by law. Whether or not the premise is correct,[5] it cannot alter the

---

**3.** *But see* note 5 *infra* and accompanying text.

**4.** It is not entirely clear to me whether the majority construes *Sperling I* as having relied on the Lipsky evidence on counts 8–10 to support the conviction on count 2, or as having affirmed count 2 on the basis of the non-Lipsky evidence. *Compare, e.g.,* opinion of Timbers, J., *ante* at 227 ("[W]e affirmed the § 848 conviction *not* on evidence other than that in support of the substantive counts, but precisely on the evidence presented in support of those counts" (emphasis in original)), *with id.* at 226–27 n.1 (quoting *Sperling I*'s recitation of evidence of acts other than those charged in counts 8–10 and conceding that "[w]e held that *this* evidence was more than sufficient to sustain appellant's conviction under the continuing criminal enterprise count" (emphasis added)). With all due deference to the views of Judge Timbers as the author of *Sperling I,* the *Sperling I* opinion itself leaves little doubt that the affirmance on count 2 was based only on evidence other than Lipsky's testimony. *See* 506 F.2d at 1335, 1344.

**5.** These instructions, which in fact had been requested by the government, reflected the specificity of count 2 of the indictment, which expressly linked the charged violation of § 848 to the violations alleged in counts 8–10. Count 2 charged as follows:

COUNT TWO

The Grand Jury further charges:

From on or about the 1st day of May, 1971, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of New York, HERBERT SPERLING, the defendant, unlawfully, wilfully, intentionally and knowingly did engage in a continuing criminal enterprise *in that he* unlawfully, wilfully, intentionally and knowingly did violate Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) *as alleged in Counts Eight, Nine and Ten of this indictment which are incorporated by reference herein,* which violations were a part of a continuing series of violations of said statutes undertaken by the defendant in concert with at least five other persons with respect to whom the defendant occupied a position of organizer, supervisor and manager and from

instructions given, and in light of those instructions we were not entitled to affirm on the basis of acts not charged in counts 8–10, for it is established that a defendant has a due process right to have an affirmance of his conviction based strictly on a consideration of the premises on which the jury was instructed to base its verdict. *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).

In *Dunn,* the defendant had been charged with making inconsistent statements in grand jury proceedings or proceedings ancillary thereto, in violation of 18 U.S.C. § 1623 (1976). The government introduced evidence that Dunn had given testimony before the grand jury, that he thereafter, in September 1976, made a statement inconsistent with his grand jury testimony, and that in October 1976 he gave testimony reiterating his September statement. The indictment charged that Dunn's grand jury testimony was inconsistent with his September statement, and the case was submitted to the jury on this theory. 442 U.S. at 106 & n.4, 99 S.Ct. at 2194 & n.4. On appeal from the conviction, the court of appeals ruled that the September statement should not have been considered since it was not made in an "ancillary" proceeding, but that as the October statement had been made in such a proceeding, the conviction would be upheld. In an 8–0 decision, the Supreme Court reversed, stating that

> while there was no variance between the indictment and the proof at trial, *there was a discrepancy between the basis on which the jury rendered its verdict and that on which the Court of Appeals sustained petitioner's conviction.* Whereas the jury was instructed to rest its decision on Dunn's September statement, the Tenth Circuit predicated its affirmance on petitioner's October testimony. The Government concedes that this ruling was erroneous.... We agree.

which continuing series of violations the defendant obtained substantial income and resources.

 (Title 21, United States Code, Section 848)

. . . . .

(Emphasis added.) In light of the specificity with which count 2 incorporated the particular charges of counts 8–10, it is not clear that a

To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. *See Eaton v. Tulsa,* 415 U.S. 697, 698–699 [94 S.Ct. 1228, 1229–1230, 39 L.Ed.2d 693] (1974) (*per curiam*); *Garner v. Louisiana,* 368 U.S. 157, 163–164 [82 S.Ct. 248, 251–252, 7 L.Ed.2d 207] (1961); *Cole v. Arkansas,* 333 U.S. 196, 201 [68 S.Ct. 514, 517, 92 L.Ed. 644] (1948); *De Jonge v. Oregon,* 299 U.S. 353, 362 [57 S.Ct. 255, 259, 81 L.Ed. 278] (1937). There is, to be sure, no glaring distinction between the Government's theory at trial and the Tenth Circuit's analysis on appeal. The jury might well have reached the same verdict had the prosecution built its case on petitioner's October 21 testimony adopting his September 30 statement rather than on the September statement itself. *But the offense was not so defined, and appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.* *Id.* at 106–07, 99 S.Ct. at 2194–95 (emphasis added).

The principle of *Dunn* is no less applicable to Sperling. Count 2, *see* note 5 *supra,* charged Sperling with having violated § 848 "in that he" engaged in the specific acts alleged in counts 8, 9, and 10, which were incorporated by reference in count 2; these were alleged to be part of a continuing series of violations none of which was even minimally detailed. Consistent with count 2, the trial court's charge instructed the jury that it must find Sperling guilty of counts 8, 9, and 10 in order to convict him

general instruction, or one referring to different acts at other times and places—which are nowhere mentioned in the indictment—would not have been "an informal but impermissible amendment of the indictment." *United States v. Knuckles,* 581 F.2d 305, 310 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *see also id.* at 311–12.

on count 2. I find the parallel between this case and *Dunn* inescapable. Notwithstanding the ruling in *United States v. Sisca,* 503 F.2d 1337, 1345–46 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974), that a defendant may be convicted under § 848 even if *no* substantive offenses have been alleged as separate counts of the indictment, *Dunn* holds that due process does not permit the appellate court to substitute uncharged offenses for the charged violations that cannot be sustained. Thus, when the jury has been instructed that it may conclude "A" only if it has found "B," we simply may not affirm on the supposition that the outcome would have been the same if the jury had been told that it could conclude "A" if it had found "C."

In sum, I disagree with the majority's view of the merits of Sperling's claim. As I read *Sperling I,* Sperling's contention that his count 2 conviction was affirmed on the basis of facts other than those on which the jury had been instructed to render its verdict is factually correct. And his contention that such an affirmance denied him due process is legally sound.

### C. Prior Treatment of Sperling's Claim

Nor do I share the majority's view that on the present § 2255 petition we and the district court are free, in the interests of achieving an end to litigation, not even to consider the merits of Sperling's claim because that claim had been rejected in the first § 2255 proceeding. Section 2255 allows a prisoner in federal custody to move at any time to have the court that sentenced him vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States. While succes-

sive motions on the same grounds are not favored,[6] the Supreme Court has stated that "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged," *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963), and has formulated the following basic rule for determining whether a repetitive motion may be denied without consideration of its merits:

> Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Id.* at 15, 83 S.Ct. at 1077 (footnote omitted). In the present case it appears to me that none of the three *Sanders* conditions is met.

Part of the first *Sanders* condition is the requirement that the petitions' common "ground," which *Sanders* defined as "simply a sufficient legal basis for granting the relief sought by the applicant," *id.* at 16, 83 S.Ct. at 1077, must previously have been determined. There are several indicia that the district court's decision on the first § 2255 petition did not determine the claim asserted by Sperling, *i.e.,* that he was denied due process by the affirmance on a different factual basis than that on which the jury had been instructed to rest its verdict.

First, although on that original petition the district court's decision, which is set out in the margin,[7] began by recognizing that

---

**6.** Section 2255 provides that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

**7.** The district court's ruling on Sperling's first application stated as follows:

> Sperling contends that the absence of a "guilty" verdict on three of the substantive counts in the indictment (8, 9, 10) removes the basis for his conviction for engaging in a

continuing Criminal Enterprise under 21 U.S.C. 848 (Count 2) because the charge of the jury required it to find that he had *committed the offenses* set forth in those counts. Counts 8, 9 and 10 were ultimately nolle prosequid after guilty verdicts thereon were set aside and those counts ordered retried due to the government's failure to produce a certain letter affecting a witness' credibility, viz., violation of a Jencks Act requirement, 18 U.S.C. § 3500. The appellate court in

Sperling's claim was based on the fact that the jury had been instructed not to convict on count 2 unless it was satisfied that Sperling was guilty on counts 8, 9, and 10, the decision never mentioned the other essential ingredient of Sperling's claim, *i.e.*, that our Court affirmed the count 2 conviction on the basis of evidence of acts other than those charged in counts 8–10. Rather, the district court seemed to assume that *Sperling I* affirmed the count 2 conviction in reliance on the Lipsky evidence on counts 8–10. Proceeding on this assumption, the court construed Sperling's claim as (a) a simple attack on the sufficiency of the evi-

dence to support a conviction on count 2, and (b) a Jencks Act claim that the Lipsky evidence should not have been considered on count 2.[8] These are the only matters the district court addressed, as it concluded that "no constitutionally required evidence was lacking" for conviction on count 2, and that the government's Jencks Act violation was not sufficiently serious to warrant relief under § 2255. Memorandum decision dated August 31, 1978, at 1.

The court's failure to recognize the actual nature of Sperling's claim is further revealed by its comment that a § 2255 peti-

ordering the retrial of those counts expressly found nonetheless that
> "We also hold that Sperling's conviction on Count Two was not affected by the absence of the Lipsky-Feffer letter" [the omitted Jencks Act disclosure] 506 F.2d at 1337 n.18.

The appellate court did not reverse and dismiss Counts 8, 9 and 10 as it would have done if the evidence of Sperling's commission of the offenses had been lacking. *Burks v. United States,* [437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).] That is, the proof of Sperling's commission of the offenses charged under Counts 8, 9 and 10 was amply shown in the record and Count 2 was therefore properly considered by the jury and resolved in favor of the government pursuant to the charge of the Trial Judge on the issue of the existence of a criminal enterprise under 21 U.S.C. § 848. The Court of Appeals expressly found that the verdict under Count Two (the continuing enterprise) was supported by "more than sufficient evidence" 506 F.2d at 1344. Thus no constitutionally required evidence was lacking for the Sperling conviction under Count Two. The nondisclosure of Jencks Act material which tripped the conviction on Counts 8, 9 and 10 did not constitutionally taint conviction under Count Two—the failure to apply such a statute raises no issue of constitutional dimension.

There was no fundamental defect herein which inherently resulted in any miscarriage of justice and the matter now conjured up on Sperling's behalf is merely a challenge bottomed on non-constitutional error at best. Such a challenge does not ground collateral review under § 2255. *Kaufman v. United States,* 394 U.S. 217, 223 [, 89 S.Ct. 1068, 1072, 22 L.Ed.2d 227] (1969); *Hill v. United States,* 368 U.S. 424, 428 [, 82 S.Ct. 468, 471, 7 L.Ed.2d 417] (1962); *Sunal v. Large,* 332 U.S. 174 [, 67 S.Ct. 1588, 91 L.Ed. 1982] (1947). "The writ of habeas corpus and its federal counterpart, 28 U.S.C. § 2255, will not be allowed to do service for an appeal", with respect to non-

constitutional error. *Stone v. Powell,* 428 U.S. 465, 477, n.10 [, 96 S.Ct. 3037, 3044, n.10, 49 L.Ed.2d 1067] (1976). Moreover, the present challenge is too late. Sperling never challenged heretofore his conviction under Count Two based on the non-disclosure of the Jencks Act material. The time to do so was on his direct appeal or on petition for rehearing after affirmance of the conviction on Count Two. Other opportunities have intervened since then without a word suggesting the present challenge. Even if we assume that these opportunities following the appeal would have been considered too late, the present claim asserted still later certainly precludes review under § 2255. Without any doubt, there has been no good "cause" for the previous omission to raise the present claim.

In sum, the Court of Appeals affirmed Sperling's conviction on Count Two on "more than sufficient" evidence and its decision that the Jencks Act error did not taint any Counts other than 8, 9 and 10 [not Two] gives no ground arising under or protected by the Constitution.

Petition Denied.
Memorandum decision dated August 31, 1978 (emphasis in original; footnote omitted).

8. See the portion of the court's decision, note 7 *supra,* immediately following its citation of *Burks v. United States.* The court's premise that *Sperling I* relied on the Lipsky testimony in sustaining the count 2 conviction would explain the court's insistent characterization, in both the prior and present § 2255 proceedings, of Sperling's due process claim as one based simply on the Jencks Act. *Sperling I* did of course state that the conviction on count 2 was not affected by the Jencks Act violation; but this was quite plainly because only Lipsky material had been wrongfully withheld and *Sperling I* relied on *non*-Lipsky evidence to support the conviction on that count.

tion cannot be used as a substitute for appeal from the conviction. This observation was inapposite because Sperling's § 2255 claim is that he was denied due process not by the trial court but by the appellate court.

Finally, the court concluded that Sperling's claim was "merely a challenge bottomed on non-constitutional error at best." *Id.* at 2. Such a characterization is surely incompatible with any recognition of Sperling's claim as he framed it.[9]

The majority concludes that the first *Sanders* condition is met, *i.e.,* that Sperling's due process ground was determined on his first petition, simply because the ground was presented and the petition was denied. I do not believe the first *Sanders* requirement means so little. A determination of a ground—*i.e.,* a legal basis for relief, *Sanders v. United States, supra,* 373 U.S. at 16, 83 S.Ct. at 1077—that is not the one relied on by the prisoner cannot fairly be viewed as a determination of the prisoner's ground. Just as we should resolve in the prisoner's favor all doubts as to whether two grounds are the same or different, *id.,* so should we infer, when the district court has apparently misperceived the gist of the prisoner's ground, that the unrecognized ground has not been determined.

Even if the nonresponsive rejection of Sperling's first § 2255 petition be deemed a "determination" of his due process ground, the second *Sanders* condition was not satisfied. That requirement, *i.e.,* that the claim have been decided "on the merits," *id.* at 15, 83 S.Ct. at 1077, means not only that the

decision must not have rested on a procedural basis, but also that it must have adjudicated "the merits of the ground presented," *id.* at 16, 83 S.Ct. at 1077. Rejection of a § 2255 motion on the merits of a ground other than that argued by the prisoner hardly satisfies this condition. The majority views the prior rejection of Sperling's § 2255 petition as a determination on the merits of his due process ground because it characterizes "[t]he issue" presented as "whether the judgment vacating the convictions on the substantive counts rendered the continuing criminal enterprise conviction constitutionally infirm." Opinion of Timbers, J., *ante* at 225–26. It concludes that the ground of Sperling's first petition was rejected on its merits because "Judge Pollack, in denying the first petition, held that the conviction was not rendered infirm." *Id.* at 226. This framing of "the issue" is so broad as to encompass any of a number of possible claims, and Judge Pollack did indeed reject two such possible claims; but they were not the due process claim on which Sperling relied.

Finally, if the first two *Sanders* conditions be viewed so technically that the district court's prior ruling on the claims as it erroneously perceived them is deemed an adjudication of the merits of the ground advanced by Sperling, I have no doubt that the interests of justice require a consideration now of the merits of the due process ground as Sperling has in fact presented it.[10] First, elementary principles of fairness demand that Sperling's due process claim not be ignored and that the court not be

---

**9.** Our affirmance of the district court's denial of the first § 2255 petition added nothing to the analysis or determination of the lower court. Our order, 595 F.2d 1209 (1979), simply read "AFFIRMED," without explication, and hardly evinced a determination of Sperling's actual contention.

**10.** I must note my disagreement with the implication in the majority opinion that the repetitious nature of a claim should incline the court toward the conclusion that the ends of justice do not require a review of the merits of the claim. The majority states as follows:

In deciding whether the ends of justice require reaching the merits, we must consider

the repetitious nature of this petition .... [A] court should be less receptive to a claim when exactly the same claim previously was decided against a petitioner.

Opinion of Timbers, J., *ante* at 226. The ends-of-justice test is a catchall requirement that comes into play under the *Sanders* formulation *only* if the repeated claim *has* already been adversely decided. *See Sanders v. United States, supra,* 373 U.S. at 15, 16–17, 83 S.Ct. at 1077, 1078. To say, then, that the ends of justice are not compelling when the repeated claim has been decided is to eliminate *Sanders*'s ends-of-justice requirement entirely.

permitted to refuse to reach its merits simply on the basis that the court has rejected a previous petition, apparently without understanding the ground on which the petition was based. More importantly, even if the court had accurately perceived Sperling's claim, it would hardly further the interests of justice to immunize a decision that is plainly incorrect. I agree with the Ninth and Eleventh Circuits that " '[t]he ends of justice are not served by refusal to consider the merits of the second application when the denial of the first rested on a court's plain errors of law.' " *Bass v. Wainwright,* 675 F.2d 1204, 1207 (11th Cir. 1982) (quoting *Cancino v. Craven,* 467 F.2d 1243, 1246 (9th Cir. 1972)).

In summary, I believe that the action taken on Sperling's first § 2255 petition did not determine the ground he advanced and that the ends of justice require that the merits of his claim be dealt with in the present proceeding.[11]

### D. *The District Court's Decision on the Present Petition*

I do not view Judge Pollack's decision on Sperling's present petition, which is reported at 530 F.Supp. 672 (S.D.N.Y.1982), as having refused to reach the merits of Sperling's claim. The basis of his decision rejecting the present application is twofold. While concluding that the petition should be denied on the ground that it was entirely repetitious, the court also proceeded to discuss the merits of various claims, arguably including the one pressed by Sperling. For the most part, however, it appears that the district court again addressed claims other than the one advanced by Sperling.

First the court characterized Sperling's claim as follows:

Petitioner on this application questions whether the Constitution requires that, in order to sustain a charge under 21 U.S.C. § 848 (Count Two herein), the defendant must be convicted of each of the crimes charged in other counts of the indictment laid under 21 U.S.C. §§ 812 and 841.

*Id.* at 673. This framing of the issue ignores the nature and cardinal role of the jury charge in the present case, and completely disregards the contention that the error consisted in the action of the appellate

---

11. I disagree with Judge Van Graafeiland's view that Sperling's claim should be rejected on grounds of judicial estoppel. In *United States v. Sperling,* 560 F.2d 1050 (2d Cir. 1977) ("*Sperling II*"), the position advanced by Sperling was not inconsistent with that taken here and clearly was not viewed by the *Sperling II* majority as foreclosing a future attack on the conviction of Sperling on count 2.

In *Sperling II,* Sperling (who there appeared *pro se*) did not contend that his conviction on count 2 was valid in order to avoid his conviction on count 1. Rather, he contended simply that, having been convicted on both counts, one of which charged a lesser included offense within the other, he could not be punished for both. Thus, his main brief stated that "[t]his is a double jeopardy case involving the issue of multiple *punishment,* as contrasted to prosecution or conviction," (Sperling brief in *Sperling II* at 10; emphasis in original), and his reply brief reiterated this as follows:

*ISSUE INVOLVED IS THE SENTENCE, NOT THE CONVICTION*

The government erroneously states at page 3 *et seq* of its brief that Sperling is attacking his "conviction" on Count 1. Actually, Sperling in his main brief went to great pains to show that on this appeal, he is raising only the issue of multiple "punishment", as contrasted to prosecution or conviction (Br. 10); that a continuing course of criminal conduct may not be "punished" cumulatively (Br. 11)

. . . .

(Sperling reply brief in *Sperling II.*) The *Sperling II* majority correctly understood that Sperling attacked only the pyramiding of punishment, as it stated that Sperling challenged the "sentencing on both counts, rather than on only one or the other." *Sperling II,* 560 F.2d at 1053; *id.* at 1060 n.13. The fact that Sperling did not challenge the validity of his convictions in *Sperling II* should not bar his present challenge.

In agreeing with Sperling's contention that the double jeopardy clause required the vacation of his sentence on either count 1 or count 2, the *Sperling II* Court did not disturb the conviction on count 1, and obviously the majority did not believe that a later challenge to the conviction on count 2 would be foreclosed. The majority stated as follows:

We, of course, leave undisturbed Sperling's sentence and fine on Count Two and in the unlikely event that sometime in the future his conviction on Count Two shall be overturned, the sentence imposed on the unaffected conviction on Count One is to be reinstated. *Id.* at 1060.

court. It plainly is not the claim Sperling has framed.

Thereafter, following a description of Sperling's conviction and his direct appeal, the district court reiterated its 1978 analysis of Sperling's claim:

> As the government correctly observes, Sperling continues to argue today, as he did in 1978, that the decision of the Court of Appeals reversing Counts Eight to Ten on statutory grounds, *but refusing to reverse Count Two on the same statutory ground,* somehow resulted in two constitutional errors: lack of sufficient evidence as to a necessary element of Count Two and lack of trial by jury on that count.

*Id.* at 677 (emphasis added). The court stated that it had ruled on this claim, noting as follows:

> The Court of Appeals' rejection of the claim of violation of the Jencks Act in respect of the conviction on Count Two and the finding by the Court of Appeals that there was more than sufficient evidence to sustain that conviction were cited by this Court in its denial of the earlier § 2255 petition and that decision and its affirmance were on the merits; the decision left the petitioner without a constitutional claim and without a statutory claim. As this Court wrote on the 1978 petition, Sperling "raises no issue of constitutional dimension" and the petitions amount to nothing more than an invalid statutory claim in disguise.

*Id.* The district court's emphasis on the Jencks Act as the sole foundation for Sperling's claim reflects the court's continued interpretation of *Sperling I* as having used the Lipsky testimony in order to uphold the count 2 conviction. *See* note 8 *supra.*

Nonetheless, after having described Sperling's claim as simply a "statutory claim in disguise," 530 F.Supp. at 677, the court proceeded to discuss Sperling's petition as claiming a "lack of trial by jury on" count 2, *id.*—a characterization that is far closer to Sperling's actual claim than any previously mentioned by the court. In rejecting this proposition, the court stated as follows:

Sperling's second argument, that he was deprived of a trial by jury, is equally specious since all the evidence was in fact submitted to the jury which found—in a verdict not infected by constitutional error—that Sperling committed the predicate acts charged in Counts Eight to Ten as part of his supervision of a narcotics enterprise. This case is not at all like *Dunn v. United States, supra,* where the Court of Appeals had affirmed a conviction on a basis not argued nor proved (much less proved beyond a reasonable doubt) at trial, a ruling which the government conceded was erroneous. Here the proof given to the jury under Count Two remained constitutionally sound both before and after the Second Circuit affirmed the conviction on that count. The holding of the Court of Appeals that there was more than sufficient evidence to support the verdict on Count Two independent of Lipsky's testimony does not therefore mean that petitioner stands convicted on grounds neither considered nor decided by a jury.

*Id.* at 678. Although I regard the court's reasoning as both factually and legally flawed, it seems to me that given the court's characterization of Sperling's claim as one relating to the role of the jury, together with the explicit reference to *Dunn,* this decision should be construed as a present determination of the merits of Sperling's claim.

**E.** *Reviewing the Present Decision on the Merits*

My views of the merits of Sperling's claim are set forth in detail in Part B of this dissent. As to the action taken on Sperling's direct appeal, *Sperling I* (a) found the non-Lipsky evidence insufficient to support guilty verdicts on counts 8–10, 506 F.2d at 1335; (b) noted the lack of any evidence corroborating Lipsky as to counts 8–10, *id.;* (c) stated that the conviction on count 2 was based on evidence wholly independent of Lipsky's testimony, *id.;* (d) recounted that independent evidence with no mention whatever of any of the acts charged in counts 8–10, *id.* at 1344; and (e)

sustained the count 2 conviction on the basis of the independent evidence just recounted, *id.* at 1344–45. I therefore regard the district court's premise that *Sperling I* sustained the count 2 conviction in reliance on the Lipsky evidence on counts 8–10 as clearly erroneous.

Given an accurate recognition of the basis on which *Sperling I* upheld the count 2 conviction and of the fact that this basis differed from that on which the jury had been instructed to rest its verdict, I regard the district court's ruling that *Dunn v. United States* is inapplicable as a plain error of law.

Accordingly, I would reverse the order denying Sperling's petition and would remand the matter to the district court for an appropriate correction of Sperling's sentence.